41 A.3d 773 (2012)
425 N.J. Super. 391
Adele KONOP and Richard Konop, her husband, Plaintiffs-Appellants,
v.
Ellen J. ROSEN, M.D., Defendant-Respondent.
Docket No. A-2908-10T1.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2011.
Decided April 25, 2012.
*776 Law Offices of G. Martin Meyers, P.C., attorneys for appellants (G. Martin Meyers, Denville, on the brief).
Giblin & Combs, LLC, Morristown, attorneys for respondent (Christina M. Scarpa, on the brief).
Before Judges MESSANO, YANNOTTI and KENNEDY.
The opinion of the court was delivered by
MESSANO, P.J.A.D.
Plaintiff Adele Konop suffered a perforated colon during a colonoscopy performed by defendant, Dr. Ellen J. Rosen, *777 at the Hanover Endoscopy Center.[1] Later the same day, Dr. Edward McLean performed an emergency laparotomy and colostomy on plaintiff at Morristown Memorial Hospital to repair the perforation.[2] Plaintiff was hospitalized for several days, hospitalized again when her colostomy needed debridement, and readmitted a third time for additional procedures. Plaintiff filed this medical malpractice suit against defendant.
Plaintiff's expert, Dr. Meyer N. Solny, opined that defendant deviated from accepted medical standards by failing "to ensure that the patient was adequately sedated and not moving during the procedure and by [failing] to stop the procedure when excessive patient movement occurred." Solny's opinion rested exclusively upon a notation that appeared in a consultation report prepared by Dr. Victor S. Flores upon plaintiff's initial admission to the hospital.
Before trial, defendant moved to bar the notation, claiming it was inadmissible hearsay. Defendant also argued that, if the notation was excluded from the consultation report, Solny's opinion was factually unsustainable and summary judgment was appropriate. Following oral argument, the judge scheduled a hearing pursuant to N.J.R.E. 104 to consider defendant's application.
Following the hearing, in an oral opinion, the judge concluded that the notation was inadmissible hearsay and should be redacted from the medical records. After originally agreeing to stay his decision so plaintiff could seek appellate review, the judge subsequently vacated the stay and granted summary judgment to defendant. Plaintiff now appeals from the January 26, 2011, order excluding the notation and granting defendant summary judgment.
Plaintiff contends that the judge erred in determining the notation was inadmissible hearsay, and, as a result, summary judgment should have been denied. Defendant counters by arguing that the judge properly excluded the notation because it was hearsay, not subject to any exception in our Rules of Evidence, and otherwise "untrustworthy." Both parties agree that if the notation is inadmissible, summary judgment was appropriate.
We have considered these arguments in light of the record and applicable legal standards. We reverse and remand the matter for further proceedings.

I.
Plaintiff had no recall of the actual colonoscopy. Defendant testified at the Rule 104 hearing that the procedure was performed under monitored anesthesia, i.e., plaintiff was in a sleep-like state. With monitored anesthesia, the initial dose may wear off causing a heightened state of consciousness in which the patient is able to move. If this occurs, an additional dose is administered to keep the patient in the necessary sleep-like state. As a result, an anesthesiologist, Dr. Murthy, was present for the entire procedure performed on plaintiff. The record does not reveal whether Murthy was deposed.
Defendant testified that because the anesthesia is "very short acting," it "typically will [be given] periodically during the procedure," but claimed that nothing beyond *778 the norm was administered to plaintiff. In her deposition, defendant testified that plaintiff "was not moving too much to do the procedure," but she did "not recall if [plaintiff] was moving at all."
After the colonoscopy, plaintiff complained of abdominal pain and was unable to "pass gas." Defendant examined plaintiff and had a nurse "place[] a rectal tube in" plaintiff "to facilitate passage of gas." When this was unsuccessful, defendant grew "concern[ed]" there was a perforation and arranged for plaintiff's transportation to the hospital. Defendant also called for a surgeon to meet plaintiff in the emergency room.
Defendant also proceeded to the emergency room and discussed plaintiff's condition with McLean. After some diagnostic tests were performed, defendant's suspicion was confirmed, and McLean promptly operated to repair the perforation. Defendant recalled speaking with plaintiff and McLean, but no other doctors, and told McLean the colonoscopy had gone "smoothly." Defendant acknowledged that, other than plaintiff, she was the only person at the hospital who was also present during the colonoscopy.
Flores did not testify at the Rule 104 hearing but was deposed at an earlier date. He prepared the "consultation" report upon plaintiff's appearance in the emergency room. Flores, a first-year resident at the time, hand-wrote the report contemporaneously, believed its contents were accurate, but could not recall the source of all the information contained in it. Flores testified that routinely he did not speak to the "treating physician," but could not specifically recall whether he spoke to defendant. He typically obtained his information from his "supervisor, [his] senior, and [his] attending," in this case McLean, who "have already been told what's going on."
In the consultation report, after noting plaintiff's age and the fact that her colon had been "accidentally perforated," Flores wrote:
Pt. has tics and was moving too much at time of procedure. Dr. Rosen was performing the procedure and called surgery for poss. laparotomy....
Flores testified that the term "tics" is shorthand for either diverticulitis or a motor tic, which occurs with certain neurological illnesses. McLean reviewed the consultation report, including the subject sentences, and "cosigned the note."
At the Rule 104 hearing, defendant testified that "tics" was shorthand for "diverticulosis,"[3] a condition from which plaintiff suffered. Defendant denied ever telling anyone that plaintiff was moving too much during the colonoscopy, or that she called for a surgical consult while "performing" the procedure. She acknowledged, however, that the balance of the consultation report was accurate.
In his deposition, McLean testified that he saw plaintiff and defendant in the emergency room of the hospital, and defendant was concerned "there may be a perforation of the colon." McLean did not specifically recall, but noted that he "probably" discussed the consultation report with Flores "since [he] work[ed] pretty closely with the residents." As to the critical notation, McLean interpreted "tics" as shorthand for diverticulosis, noting "we always ask what... the colonoscopy [was] done for, what did they see." He interpreted Flores' reference *779 "moving too much at time of procedure"as indicative of defendant's "high suspicion ... that the patient had a perforation."
At the Rule 104 hearing, McLean testified he did not recall defendant ever telling him that plaintiff was "moving too much," nor did he make that statement to Flores. McLean did not have a specific memory of signing the consultation report but acknowledged that generally he would have checked it for accuracy.
After reviewing the testimony, the judge concluded that the consultation report was not admissible pursuant to N.J.R.E. 803(c)(6). Noting he faced "a difficult decision," the judge determined "[t]here is no rational explanation as to why ... Flores made this statement." He continued:
The problem is that there are many alternate scenarios one could speculate on to explain why the first year resident made the statement. Perhaps he misunderstood a term. Perhaps the movement occurred following the completion of the procedure, while [plaintiff] was waiting to be transported to the hospital or as she awoke.
All this is highly speculative. All of this is beyond the realm of the record. The underlying derivation of this statement is cloudy, unclear and in order for me to make a determination of admissibility... it would ... really depend on a conspiracy that the doctors are all lying and perjuring themselves in order to effectuate a continuation of this coverup. Unfortunately, that is speculative.
The judge ordered the entire notation redacted from the consultation report and subsequently granted defendant summary judgment. This appeal followed.

II.
"In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12, 942 A.2d 769 (2008). "[T]he latitude initially afforded to the trial court in making a decision on the admissibility of evidenceone that is entrusted to the exercise of sound discretionrequires that appellate review, in equal measures, generously sustain that decision, provided it is supported by credible evidence in the record." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384, 997 A.2d 954 (2010). However, "[w]hen the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence," our review is de novo. Pressler & Verniero, Current N.J. Court Rules, comment 4.6 on R. 2:10-2 (2012); see also State v. Darby, 174 N.J. 509, 518, 809 A.2d 138 (2002) (applying de novo review when the trial court failed to properly analyze N.J.R.E. 404(b) evidence).
"[A] trial court confronted with an evidence determination precedent to ruling on a summary judgment motion squarely must address the evidence decision first[,] ... guided by the applicable Rules of Evidence as well as by the overarching mandate of Rule 104." Hanges, supra, 202 N.J. at 384-85, 997 A.2d 954. Rule 104 provides:
(a) Questions of admissibility generally. When ... the admissibility of evidence... is subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge. In making that determination the judge shall not apply the rules of evidence except for Rule 403 or a valid claim of privilege. The judge may hear and determine such matters out of the presence or hearing of the jury.
(b) Relevance conditioned on fact. Where evidence is otherwise admissible if relevant and its relevance is subject to *780 a condition, the judge shall admit it upon or subject to the introduction of sufficient evidence to support a finding of the condition. In such cases the judge shall instruct the jury to consider the issue of the fulfillment of the condition and to disregard the evidence if it finds that the condition was not fulfilled. The jury shall be instructed to disregard the evidence if the judge subsequently determines that a jury could not reasonably find that the condition was fulfilled.
[N.J.R.E. 104(a) and (b).]
Hearsay statements are inadmissible unless they fall within an exception. N.J.R.E. 802. Pursuant to N.J.R.E. 805, "Hearsay Within Hearsay,"
A statement within the scope of an exception to Rule 802 shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements of an exception to Rule 802.
Therefore, when "statements are `hearsay-within-hearsay,' each level ... requires a separate basis for admission into evidence." Hanges, supra, 202 N.J. at 375 n. 1, 997 A.2d 954. At issue in this case is the admissibility of a hearsay statement Flores' notation that plaintiff was "moving too much at [the] time of [the] procedure"contained within a document that was itself hearsaythe consultation report.

A.
N.J.R.E. 803(c)(6) excepts from the hearsay rule:
A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
"The purpose of the business records exception is to `broaden the area of admissibility of relevant evidence where there is necessity and sufficient guarantee of trustworthiness.'" Liptak v. Rite Aid, Inc., 289 N.J.Super. 199, 219, 673 A.2d 309 (App. Div.1996) (quoting State v. Hudes, 128 N.J.Super. 589, 599, 321 A.2d 275 (Cty.Ct. 1974)).
In order to qualify under the business record exception to the hearsay rule, the proponent must satisfy three conditions: "First, the writing must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Finally, the source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence."
[State v. Sweet, 195 N.J. 357, 370, 949 A.2d 809 (2008) (quoting State v. Matulewicz, 101 N.J. 27, 29, 499 A.2d 1363 (1985)), cert. denied, ____ U.S. ____, 129 S.Ct. 2858, 174 L.Ed.2d 601 (2009).]
Subject to the limitations of Rule 808, the business records exception routinely permits the admission of medical records. See, e.g., DeBartolomeis v. Bd. of Review, 341 N.J.Super. 80, 86, 775 A.2d 87 (App. Div.2001).
We must first resolve whether the consultation report itself was admissible under the business records exception. If it was, then the focus becomes whether Flores' notation was embedded hearsay that did not otherwise "meet[] the requirements *781 of an exception to Rule 802." N.J.R.E. 805.
The authenticity of the consultation report was not contested. Flores prepared the report near the time of plaintiff's appearance at the emergency room. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 803(c)(6) (2011) ("The requirement of the rule that business records ... were made at or about the time of the act, condition or event recorded in them, is critical to their admission.").
Considering the business records exception, we have said "that one of the critical circumstances importing reliability is the fact that the informant whose declaration is so recorded is under a duty, in the context of the activity in which the record is made, to make an honest and truthful report." State v. Lungsford, 167 N.J.Super. 296, 309, 400 A.2d 843 (App. Div.1979) (emphasis added). "[T]here is a presumption, absent contrary testimony, that those responsible for services to the public will carry out their duties in a proper, careful and prudent manner." Matulewicz, supra, 101 N.J. at 31, 499 A.2d 1363 (citation and internal quotation marks omitted); see also Hanges, supra, 202 N.J. at 388, 997 A.2d 954 (considering factors affecting the trustworthiness of the statement of a dead declarant, N.J.R.E. 804(b)(6), and noting it was "made under circumstancesthe procuring of medical serviceswhere candor is at a premium").
Flores testified that he would routinely prepare consultation reports as part of his duties at the hospital. The report was used to arrange a consultation with a specialist, in this case a surgeon, for a particular patient. And, the information contained in the consultation report was generally accurate. The sources of information contained in his report were Flores' supervisors, superiors or the attending physician, McLean, none of whom were likely to supply untrustworthy information given the context, i.e., plaintiff had a perforated colon and needed emergency surgery. The consultation report was admissible as a business record under the N.J.R.E. 803(c)(6).

B.
We move on to consider whether the specific notation"Pt. has tics and was moving too much at time of procedure" should have been redacted from the document.[4]
Rule 803(c)(6) is subject to Rule 808, a limitation upon admissibility that frequently arises in the context of medical records. N.J.R.E. 808 provides:
Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion ... tend to establish its trustworthiness.
Reading the two rules together provides the well-known limit upon admissibility of opinions embedded in medical reports when the declarant is not produced as a witness at trial.
"While `routine' findings of medical experts contained in medical records [are] admissible as business records..., such findings [are] to be excluded if they [are] `diagnoses of complex medical conditions.'" Nowacki v. Cmty. Med. Ctr., 279 N.J.Super. 276, 282, 652 A.2d 758 *782 (App.Div.) (quoting Matulewicz, supra, 101 N.J. at 32 n. 1, 499 A.2d 1363), certif. denied, 141 N.J. 95, 660 A.2d 1194 (1995). "[M]edical opinions in hospital records should not be admitted under the business records exception where the opponent will be deprived of an opportunity to cross-examine the declarant on a critical issue such as the basis for the diagnosis or cause of the condition in question." Id. at 282-83, 652 A.2d 758; see also Liptak, supra, 289 N.J.Super. at 222, 673 A.2d 309 (holding that "a complex diagnosis concerning the psychological impact of cohabitating with an individual afflicted with alcoholism" was not admissible under N.J.R.E. 803(c)(6)).
The notation at issue in this case is a factual statement, not an opinion or complex diagnosis of a medical condition subject to exclusion under N.J.R.E. 808.

C.
However, the notation was clearly hearsay. Flores acknowledged that the consultation report was based upon what others told him. Plaintiff intended to offer the notation "to prove the truth of the matter asserted," i.e., that plaintiff was moving too much during the colonoscopy. N.J.R.E. 801(c). Therefore, the notation should have been redacted from the report unless it fell within an exception to the hearsay rule. N.J.R.E. 802.
Plaintiff's contention that the notation was admissible as past recollection recorded is unavailing. N.J.R.E. 803(c)(5) requires, in part, that the statement "concern[] a matter of which the witness actually had knowledge [of at the time the statement was made]." Ibid.; see also State v. Gore, 205 N.J. 363, 377, 15 A.3d 844 (2011) (quoting this portion of the Rule as a predicate to admissibility). "The statement ... must be one which would be admissible if made by the witness while testifying." Biunno, Weissbard & Zegas, supra, comment on N.J.R.E. 803(c)(5). Flores was not present when the colonoscopy was performed and had no direct knowledge whether plaintiff was "moving too much" during the procedure.
Plaintiff's contention that the notation was independently admissible under N.J.R.E. 703 because it was the basis for Solny's opinion is equally without merit. That Rule provides,
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
[Ibid.]
"Although the rule permits a hearsay statement ... to be referred to by a testifying expert for the purpose of apprising the jury of the basis for his opinion, it does not allow expert testimony to serve as `a vehicle for the "wholesale [introduction] of otherwise inadmissible evidence."'" Agha v. Feiner, 198 N.J. 50, 63, 965 A.2d 141 (2009) (alteration in original) (quoting State v. Vandeweaghe, 351 N.J.Super. 467, 481, 799 A.2d 1 (App.Div.2002), aff'd, 177 N.J. 229, 827 A.2d 1028 (2003)). The "hearsay is not admissible substantively as establishing the truth of the statement." Vandeweaghe, supra, 351 N.J.Super. at 480, 799 A.2d 1 (citing State v. Farthing, 331 N.J.Super. 58, 77, 751 A.2d 123 (App.Div.), certif. denied, 165 N.J. 530, 760 A.2d 784 (2000)).
In this case, the facts contained in the notation formed the basis for Solny's opinion that defendant failed to properly administer adequate anesthesia or terminate *783 the procedure when plaintiff began moving. The notation itself was the only proof that plaintiff was moving excessively during the colonoscopy. Rule 703 provides no basis for the admission of the notation as substantive evidence.
Plaintiff argues that the notation is admissible as substantive evidence pursuant to N.J.R.E. 803(b)(1), which excepts from the hearsay rule "[a] statement offered against a party which is ... the party's own statement." To qualify under this exception, plaintiff needed to demonstrate that the notation accurately reflected a statement made by defendant.[5]

III.
The motion judge properly decided to conduct a Rule 104 hearing. However, the critical issues to be decided after conducting the hearing were twofold: what burden of proof was required of plaintiff as the proponent of the contested evidence and, under the Rule, what was the proper exercise of judicial discretion in making that determination?
Subsection (a) of Rule 104 deals with issues of "admissibility generally." "When the ... admissibility of evidence ... is subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge." N.J.R.E. 104(a). To the contrary, subsection (b) of the Rule governs issues of "relevanc[y]," and where otherwise relevant evidence "is subject to a condition, the judge shall admit it upon or subject to the introduction of sufficient evidence to support a finding of the condition." N.J.R.E. 104(b). Under subsection (b), the jury determines whether the condition is satisfied and is told "to consider the issue of the fulfillment of the condition and to disregard the evidence if it finds that the condition was not fulfilled." Ibid. However, "if the judge subsequently determines that a jury could not reasonably find that the condition was fulfilled[,]" he instructs the jury "to disregard the evidence." Ibid.
This case does not involve an issue of conditional relevancy. Whether plaintiff "was moving too much" during the colonoscopy was clearly relevant and not subject to any condition precedent. Therefore, the admissibility of the notation was an "issue ... to be determined by the judge" pursuant to subsection (a) of Rule 104, reviewable under an abuse of discretion standard. Hanges, supra, 202 N.J. at 384-85, 997 A.2d 954 (quoting N.J.R.E. 104(a)) (internal quotation mark omitted).
N.J.R.E. 104(a) was derived nearly verbatim from its predecessor, Evid. R. 8(1). See Biunno, Weissbard & Zegas, supra, 1991 Supreme Court Committee Comment on N.J.R.E. 104 (2011). In turn, at the time of the 1991 revision of our rules, "[t]he subject matter covered by paragraph (a) of Fed.R.Evid. 104 [was] substantially the same as that covered by Evid. R. 8(1)." Ibid.; see also State v. Phelps, 96 N.J. 500, 514, 476 A.2d 1199 (1984) (noting the federal rule was "comparable" to Evid. R. 8). Evid. R. 8(1) provided in pertinent part that "[w]hen ... the admissibility of evidence ... is ... subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the *784 judge." In this respect, the language was identical to that contained in N.J.R.E. 104(a).
Similarly, Fed.R.Evid. 104 distinguishes resolution of conditions of admissibility from conditions of relevancy. It provides:
Preliminary Questions
(a) In General. The court must decide any preliminary question about whether ... evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.
(b) Relevance That Depends on a Fact. When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.
[Ibid.]
Despite the similarity of all three rules in reserving to the judge decisions regarding the admissibility of evidence, a review of relevant case law leaves unclear what is the judge's function in determining whether a predicate condition of admissibility has been established. In this case, the admissibility of the notation hinged upon resolution of a single disputed fact, i.e., whether defendant made the statement. When admissibility is conditioned solely on the resolution of a single disputed fact, should the judge serve as the ultimate factfinder and definitively resolve whether that "condition" of admissibility has been met? Or, is the judge's function limited to deciding only whether a reasonable person could find that the condition was proven?

A.
Delegating decisions regarding admissibility to the judge, as opposed to the jury, has long been part of our evidence rules and decisional law. In Phelps, supra, 96 N.J. at 513-19, 476 A.2d 1199, the Court concluded that pursuant to Rule 8(1):
[T]he trial court alone determines whether the conditions precedent to admission of coconspirator hearsay have been satisfied. These conditions (a statement made during and in furtherance of the conspiracy and the existence of other evidence of the conspiracy to which the defendant was a party) focus on the reliability of the hearsay and not its relevance.

[Id. at 513-14, 476 A.2d 1199.[6]]
The Court explained a rationale for the Rule:
[C]onditions of admissibility ... must be found by the judge. Rule 8 provides that the judge shall find the necessary preliminary facts and that, with certain indicated exceptions, his finding on the question of admissibility shall be final. These are cases in which the evidence, if found inadmissible, is excluded not because it is not relevant but rather in spite of its relevance, for reasons of established policy which in most cases are not readily understood by a jury. It is necessary in such cases to keep the preliminary facts bearing on admissibility from the jury. A binding preliminary finding is therefore made by the judge.
[Id. at 514, 476 A.2d 1199 (quoting Report of the New Jersey Supreme Court Committee on Evidence 23 (1963)).]
*785 "Having the trial court rather than the jury evaluate reliability before admitting or rejecting evidence recognizes the judge's skill and experience. Jurors lack that training and could be unduly influenced by unreliable hearsay." Id. at 515, 476 A.2d 1199. The Phelps Court also concluded that the prosecutor's burden of proof was "a fair preponderance of evidence." Id. at 518, 476 A.2d 1199.
In State v. Gross, 121 N.J. 1, 16, 577 A.2d 806 (1990), the Court concluded a similar burden of proof applied at a Rule 8 hearing regarding the admission of a witness's prior inconsistent statement as substantive evidence under Evid. R. 63(1)(a), now N.J.R.E. 803(a)(1). However, the judge's Rule 8 determination as to reliability, and, hence, admissibility of the prior statement, ultimately left to a properly-instructed jury the assessment of the statement's "credibility and probative worth." Id. at 17, 577 A.2d 806.
In a case decided the same day as Gross, the Court stated that "the purpose of the [Evid. R.] 8 inquiry `is not to determine the credibility of the out-of-court statements' but `whether the prior statement was made or signed under circumstances establishing sufficient reliability that the factfinder may fairly consider it as substantive evidence.'" State v. Spruell, 121 N.J. 32, 46, 577 A.2d 821 (1990) (quoting State v. Gross, 216 N.J.Super. 98, 110, 523 A.2d 215 (App.Div.), certif. denied in part, 108 N.J. 194, 528 A.2d 19, (1987), aff'd in part, 121 N.J. 1, 577 A.2d 806 (1990)).
Only two reported cases have considered the admissibility of an adverse party's statement when the alleged declarant disputed making the statement in the first instance. Both analyzed the issue as one involving authentication. See N.J.R.E. 901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims.").
Our courts have long held "`it is not necessary that the proof should be conclusive but a prima facie showing that the instrument is genuine and authentic is sufficient to warrant its reception.'" In re Blau's Estate, 4 N.J.Super. 343, 351, 67 A.2d 316 (App.Div.1949) (citation and internal quotation marks omitted). "Courts are inclined to assess their role in authentication as that of a screening process[,]" and "will admit as genuine writings which have been proved prima facie genuine ... leaving to the jury more intense review of the documents." Biunno, Weissbard & Zegas, supra, comment 1 on N.J.R.E. 901. A prima facie showing may be made circumstantially. Id. at comment 3 on N.J.R.E. 901. Such circumstantial proof may include demonstrating that the statement "divulged intimate knowledge of information which one would expect only the person alleged to have been the writer or participant to have." Id. at comment 3(b) on N.J.R.E. 901. Although authentication is not at issue here, these two reported cases are useful in considering the burden of proof to be borne by the proponent of the contested evidence and the function of the judge in determining admissibility.
In State v. Mays, 321 N.J.Super. 619, 625, 729 A.2d 1074 (App.Div.), certif. denied, 162 N.J. 132, 741 A.2d 99 (1999), an electronic organizer containing names and phone numbers was discovered near the scene of a sexual assault. A detective, believing it belonged to the defendant who was a suspect at the time, contacted several of those individuals whose phone numbers were in the organizer and advised them that he was trying to contact the defendant. Id. at 626, 729 A.2d 1074. Several weeks later, "a person identifying himself as [the] defendant contacted *786 [the detective and the detective] asked him to come to the police station." Ibid.
The trial judge believed evidence that the detective "received a call from [the] defendant was hearsay if it was offered to prove that defendant was the person on the other end of the phone," and that such hearsay would permit the jury to speculate that the defendant owned the organizer. Id. at 627, 729 A.2d 1074. She gave a curative instruction advising the jurors that there was no evidence in the case that the organizer was the defendant's. Id. at 628, 729 A.2d 1074.
"[W]e consider[ed] the critical issue to be whether the telephone call alleged to have come from defendant ... was properly authenticated." Ibid. (citing N.J.R.E. 901). "The proponent of the evidence [was] only required to make a prima facie showing of authenticity," rendering the statement "admissible, and the ultimate question of authenticity of the evidence is left to the jury." Ibid. Proof of the identity of the caller may be direct or circumstantial. Id. at 628-29, 729 A.2d 1074.
We concluded "that there were sufficient indicia of reliability to authenticate the telephone call." Id. at 629, 729 A.2d 1074. "Since the telephone call was properly authenticated, the content of the conversation, albeit hearsay, was admissible as a statement offered against a party, the defendant." Ibid. (citing N.J.R.E. 803(b)). We held that "[t]he trial judge should have given a limiting instruction telling the jury that they could only use this evidence if they found that the caller was, in fact, defendant." Ibid.
In Kalola v. Eisenberg, 344 N.J.Super. 198, 200, 781 A.2d 77 (Law Div.2001), the plaintiff filed a malpractice complaint against her dentist. She eventually sought treatment from a new dentist, who testified that his office received two threatening phone calls from someone who identified himself as the defendant, referenced the plaintiff and described the dental work previously performed. Id. at 202, 781 A.2d 77. Defendant denied making the calls and moved in limine to exclude the evidence. Id. at 203, 781 A.2d 77.
The Law Division concluded that "Rule 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find that the matter in question is what its proponent claims." Id. at 206, 781 A.2d 77. The judge described the finding as one "of conditional relevancy," and held that the jury should be instructed, pursuant to N.J.R.E. 104(b), that if "the conditions of authentication are not met, [it] shall disregard the proof of the telephone conversation as irrelevant." Id. at 209, 781 A.2d 77.
Although authentication is "a condition precedent to admissibility," N.J.R.E. 901, presumably subject to Rule 104(a) and an issue "to be determined by the judge," we glean from Mays and Kalola that the judicial function is limited. The judge does not determine whether the proponent has incontrovertibly proven the "condition." The exercise of judicial discretion requires only a determination that there exists sufficient evidence for the jury to decide the condition in favor of the proponent of the evidence.
Two other cases involved proffers of contested hearsay statements made by declarants unavailable to testify. In Hanges, supra, 202 N.J. at 374-76, 997 A.2d 954, the decedent was involved in a motor vehicle accident and subsequently told responding police officers that the accident was caused by a "phantom vehicle." Approximately five weeks later, he committed suicide. Id. at 376, 997 A.2d 954. His estate filed an uninsured motorist claim, and the defendant insurer moved for summary judgment arguing there was no competent *787 proof of any phantom vehicle having caused the accident. Id. at 377, 997 A.2d 954. The trial judge concluded that the decedent's statements to the police were not made in good faith and were not trustworthy, two requirements for admission of the police report under N.J.R.E. 804(b)(6).[7]Id. at 378, 997 A.2d 954. The judge granted the defendant summary judgment. Ibid.
Considering plaintiff's statement to police at the accident scene, the Court concluded that the motion judge had mistakenly exercised his discretion in determining it was inadmissible. Id. at 388, 997 A.2d 954. Focusing on the motion judge's conclusion "that [the] plaintiff had `failed to show that the decedent's statement was made in good faith or it was ... trustworthy[,]'" the Court concluded:
The full record before the trial court, however, tells a different tale. No doubt, decedent was involved in a one-car crash, and there is only his statement upon which blame for the accident can be shifted to another. Further, the skepticism with which the trial court viewed decedent's statement, although not dispositive, is understandable. That said, the record before the trial court simply contained no objective proof of deceit by decedent: intuition aside, there was no evidence adduced that demonstrated the impossibility or unlikelihood of decedent's statement.
[Id. at 387-88, 997 A.2d 954.]
However, the Court noted that in determining the decedent's statement to the police was admissible, the ruling did not "constitute[ ] definitive proof of the events surrounding the accident," and it was "express[ing] no view as to the weight to be accorded those proofs or the credibility judgment to be made thereon, both of which reside squarely with the factfinder." Id. at 389 n. 13, 997 A.2d 954.
A final case that predates New Jersey's adoption of formal evidence rules presents factual circumstances most similar to this matter.[8] In Kasiski v. Int'l Paper Co., 58 N.J.Super. 353, 356-57, 156 A.2d 273 (App. Div.), rev'd on dissent, 31 N.J. 267, 157 A.2d 1 (1959), the petitioner's husband was hospitalized after collapsing at work and died soon thereafter from a cerebral aneurysm. There were no witnesses to his collapse or to his activity immediately preceding. Ibid. The petitioner sought Workers' Compensation benefits claiming that the aneurysm was caused by a coughing fit, in turn caused by excessive dust inhaled during the course of his employment. Ibid.
The sole support for this claim was a note in the hospital chart made by a physician who had no independent recollection of the events, and who testified by relying upon the records. Id. at 358-59, 156 A.2d 273. The report indicated plaintiff had been transferred from another hospital because of a "subarachnoid hemorrhage," which "[s]udden onset [began] 36 hours ago when coughing dust at place of work." *788 Id. at 360, 156 A.2d 273. The source of that information was contested, petitioner arguing that the entire record was admissible because circumstantial evidence indicated the information regarding the coughing fit came from the decedent. See id. at 362-63, 156 A.2d 273. The majority of this court concluded "there [was] no competent proof that the statement about coughing dust, written by the doctor into the hospital records, came from the decedent." Id. at 362, 156 A.2d 273.
Judge Freund dissented. He "agree[d] with the basic premise of the majority ... that where there is a preliminary question of fact to be decided before evidence is to be admitted, the burden of proving the preliminary fact rests upon the proponent of the subject evidence." Id. at 370, 156 A.2d 273. Thus, "the burden of proof was the petitioner's to establish the source of the vital history in ... the hospital record." Ibid. However, Judge Freund reasoned there was sufficient circumstantial evidence to support the conclusion that the decedent provided the information to the doctor. Ibid. The Supreme Court reversed on Judge Freund's dissent. Kasiski v. Int'l Paper Co., 31 N.J. 267, 269, 157 A.2d 1 (1959).

B.
Against this less-than-clear landscape of New Jersey precedent, we consider case law developed under Fed.R.Evid. 104(a).
The United States Supreme Court and other federal courts have routinely held that questions of admissibility are resolved under Rule 104(a) by the judge, not the jury, utilizing a preponderance of the evidence standard. See, e.g., Bourjaily v. United States, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144, 153 (1987) (noting that preliminary questions of fact regarding the existence of a conspiracy, and, hence, the admissibility of co-conspirators' hearsay statements, are decided by the judge under Fed.R.Evid. 104(a), with the proponent bearing the burden of proof by a preponderance of the evidence); United States v. Garza, 435 F.3d 73, 77 (1st Cir.2006) (holding that admissibility of transcripts of taped conversations purported to be the defendant's admissions was an issue for the court to determine using the preponderance of the evidence standard); Earle v. Benoit, 850 F.2d 836, 841 n. 6 (1st Cir. 1988) (noting the same standard applies in civil cases).
However, some federal courts have concluded that the judge's role in preliminary determinations is limited. For example, in United States v. Hove, 52 F.3d 233, 236-37 n. 4 (9th Cir.1995), abrogated on other grounds, Roy v. Gomez, 81 F.3d 863 (9th Cir.1996), the court noted that in deciding whether the government established that the defendant's conduct was an "adoptive admission," non-hearsay under Fed. R.Evid. 801(d)(2)(B), the proper inquiry for the judge was "[w]hether a reasonable jury could conclude that [the defendant] heard, understood, and would have responded to the statements if he were innocent." (Emphasis added).
In United States v. Barletta, 652 F.2d 218, 218 (1st Cir.1981), the government appealed "from an order ... refusing to admit into evidence in a criminal trial a tape recording of a conversation between the defendant and a government informant." In considering whether statements made by the informant could be considered as non-hearsay "adoptive admissions" under Fed.R.Evid. 801(d)(2)(B), the appeals court explained:
[T]he court's ruling that the three contested statements by the informant were not adopted as admissions by the defendant presents a difficult question of decisional standards. Rule 104(a) states the general principle that preliminary questions *789 concerning admissibility are to be decided by the court, but does not indicate the standard by which they are to be decided. The court's role in ruling on the admissibility of evidence generally suggests that it should rule on the basis of its own factual assessment. But the "adoption" question comes within a special subclass of preliminary questions, those which present precisely the same question as an ultimate issue of fact in the case, which we think demands a different standard: to preserve the proper allocation of responsibilities between judges and juries, such questions ought to be decided by the latter. Thus the court's role in these instances is not to make a factual determination, but rather to rule as a matter of law whether a reasonable jury could properly find the ultimate fact in favor of the proponent of the evidence. ... Read in this light, then, we think the "preliminary" question to be decided by the court under Rule 104(a) is properly understood in such instances to be the question of law whether a reasonable jury could find a particular fact.... In this case, the precise question to be asked is whether a jury could find the fact in the government's favor by a preponderance of the evidence. ... Thus the district court's application of the ordinary standard governing preliminary questions cannot be sustained in this case.
[Id. at 219-20 (citations omitted).]
The Barletta court noted that this standard was particularly appropriate in a criminal case because "to deny the jury the possibility of making a particular fact-finding simply because the court would determine the fact otherwise might in criminal cases deprive a defendant of his Sixth Amendment right to have his case tried to a jury." Id. at 219; see also, United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994) (applying Fed.R.Evid. 104(a) to contested authentication issue and determining that the judge must decide only if there was "enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be").
At least one other federal court has expressed similar reasoning in the civil context, under circumstances strikingly similar to this case. In Forbis v. McGinty, 292 F.Supp.2d 160, 160-61 (D.Me.2003), the plaintiff sought to exclude a notation made on an emergency room admission report. The emergency room physician noted in the history that the plaintiff's injuries were caused when she attempted to break up a fight between her sons. Id. at 161. The doctor "had no present memory of whether this information came directly from [the plaintiff]" and "testified that although he usually receive[d] such patient history directly from the patient, he sometimes [got] it from the nurse or paramedics." Ibid. The plaintiff contended that her injuries were received from the defendant police officers who responded to the dispute. Ibid.
The court reasoned that "[i]f [the plaintiff] told [the doctor] that her injury occurred when she `tried to break up fight @ home"sons"' that statement would be admissible under Fed.R.Evid. 801(d)(2) as an admission by a party-opponent." Ibid. Reasoning further that the note in the report was admissible as a "recorded recollection under Fed.R.Evid. 803(5)," the court concluded that "the jury will ultimately have to determine whether [the plaintiff] actually made the statement to [the doctor]. They will have the note, presumably [the doctor's] present inability to recall whether [the plaintiff] actually said it, and her denial, and will decide accordingly." Id. at 162-63.
*790 The court noted that "[p]reponderance of the evidence is the standard by which the judge determines the preliminary question of admissibility." Id. at 162 n. 2. But, citing Barletta and other federal precedent, the court reasoned:
Where the preliminary fact (i.e., is the doctor's note accurate in reflecting [the plaintiff] as having attributed the injury to her sons' altercation?) is so closely tied to an ultimate issue in the case (i.e., how the injury occurred), these cases suggest that it is not the court's role to make a factual determination, but rather to decide only whether a reasonable jury could properly find the ultimate fact in favor of the proponent of the evidence.

[Ibid.]
Noting "a primary reason for excluding hearsay is its insulation from cross-examination[,]" the court reasoned:
[T]he hearsay here[the doctor's] out-of-court note about what [the plaintiff] allegedly saidcan be subject to at least partial reliability testing in front of the jury by cross-examining the doctor on his recordkeeping practices (and current memory), as well as by introducing the testimony of [the plaintiff] or other potential sources for the information. It is fitting for the jury to make the ultimate credibility determination.
[Ibid.]

IV.
Judges must routinely make "decisions concerning the admissibility of evidence [that] clearly are the product of the application of our Rules of Evidence to adduced facts, and thus are themselves pure issues of law." Hanges, supra, 202 N.J. at 383, 997 A.2d 954. For example, in deciding whether a statement made by a deceased declarant is admissible, the judge must determine not only that the statement was made by the deceased declarant from personal knowledge; the judge must also decide that the statement was "made in good faith[,]" and, based on the "probability from the circumstances[,] that the statement [was] trustworthy." Id. at 385, 997 A.2d 954 (quoting DeVito v. Sheeran, 165 N.J. 167, 194, 755 A.2d 1147 (2000)). The determination of trustworthiness under this exception "is a subjective one," implying it is a determination not to be made collectively by the jury. See id. at 386, 997 A.2d 954 (citation and internal quotation mark omitted).
Many other exceptions to our hearsay rule require similar determinations particularly suited to the experience and expertise of the judge because they require a legal conclusion to be drawn from facts that are frequently, but not necessarily, contested by the parties. See, e.g., N.J.R.E. 803(c)(2) (requiring that an "excited utterance" relate to "a startling event or condition made while the declarant was under the stress and excitement caused by the event"); N.J.R.E. 803(c)(3) (requiring a statement of "existing mental, emotional or physical condition" to be made "in good faith," evidencing a "then existing state of mind, emotion, sensation or physical condition..., but not including a statement of memory or belief"); N.J.R.E. 803(c)(4) (requiring statements made for purposes of medical diagnosis or treatment to be "made in good faith" but only to "the extent that the statements are reasonably pertinent to diagnosis or treatment"). In each instance, the determination is entrusted solely to the judge in recognition of his or her "skill and experience" and the "[j]urors['] lack [of such] training." Phelps, supra, 96 N.J. at 515, 476 A.2d 1199.
However, when the proffered evidence is "the [opposing] party's own statement," N.J.R.E. 803(b)(1), there is no pre-condition to admissibility requiring a legal conclusion *791 drawn by "application of our Rules of Evidence to adduced facts." Hanges, supra, 202 N.J. at 383, 997 A.2d 954.[9] The issue is purely a factual one whether the party-opponent made the statement. In this case, did defendant make the statement that plaintiff was "moving too much" during the colonoscopy?
The reasoning of the federal cases cited above is persuasive. From them, and from Kasiski, Mays and Kalola, which are, for various reasons already explained, not on all fours with the facts at hand, we distill two essential points. First, when the "condition" for admissibility is purely a factual determination as to whether the hearsay statement was made by an adverse party, the issue should be submitted to the jury to determine whether the condition was fulfilled. This is particularly true when the disputed fact "is so closely tied to an ultimate issue in the case." Forbis, supra, 292 F.Supp.2d at 162 n. 2; see also Barletta, supra, 652 F.2d at 219. Second, in deciding whether to submit the issue to the jury, the exercise of judicial discretion under N.J.R.E. 104(a) is limited to whether the proponent adduced sufficient evidence, direct and circumstantial, to permit a reasonable jury to conclude by a preponderance of the evidence that the fact was proven. If so, the evidence should be admitted, and the jury should be instructed that it only may consider the evidence if it concludes the contested fact is true.[10]
In this case, the only condition to admissibility of Flores' notation was that defendant made the statement. There was significant circumstantial evidence that she did. Other than plaintiff, defendant was the only person who was present both during the colonoscopy and at the hospital emergency room. The information contained in the notation regarding plaintiff's physical condition, that she suffered from diverticulosis, immediately preceded the contested statement that plaintiff was "moving too much" during the procedure. That plaintiff suffered from diverticulosis reflects information peculiarly within defendant's knowledge, since she had just performed the procedure. It can be inferred further from McLean's testimony"we always ask what... the colonoscopy [was] done for, what did they see"that defendant was the source of that information.
Undoubtedly, there is significant contrary evidence. Neither Flores nor McLean can directly attribute the statement *792 to defendant, who denies not only making the statement but also that plaintiff was "moving too much" during the procedure. The jury will undoubtedly have the opportunity to assess defendant's testimony and credibility. Indeed, the hearsay exception for statements of a party opponent has, as one of its core justifications, "that the party who has made the out-of-court statement cannot complain of [her] inability to confront and cross-examine the declarant, since [she] is the declarant." Biunno, Weissbard & Zegas, supra, comment 1 on N.J.R.E. 803(b)(1).
We reverse the order under review. The consultation report is admissible evidence under N.J.R.E. 803(c)(6) and 803(b)(1).[11] Therefore, summary judgment was improperly granted.
If the case proceeds to trial, the judge must provide a limiting instruction that the disputed notation may only be considered if the jury finds by a preponderance of the evidence that defendant made the statement. See Mays, supra, 321 N.J.Super. at 629, 729 A.2d 1074; Kalola, supra, 344 N.J.Super. at 209, 781 A.2d 77. The parties are free to address with the judge whether a preliminary interrogatory should be submitted to the jury since the notation provides the only support for Solny's opinion that defendant deviated from accepted medical standards.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Plaintiff Richard Konop's claim is wholly derivative of his wife's claim. We shall use the singular, "plaintiff," throughout this opinion.
[2] A "laparotomy" is defined as an "[i]ncision into the loin," and a "colostomy" is the "[e]stablishment of an artificial cutaneous opening in the colon." Stedman's Medical Dictionary 368, 936 (26th ed. 1995).
[3] Diverticulosis is the "[p]resence of a number of [pouch or sac-like openings] from the intestine." Stedman's Medical Dictionary 513 (26th ed. 1995). Diverticulitis is the "[i]nflammation of a [pouch or sac-like opening], especially of the small pockets in the wall of the colon." Ibid.
[4] Plaintiff has not argued that the judge erred in barring admission of the other portion of Flores' notation, "Dr. Rosen was performing the procedure and called surgery for poss. laparotomy...." It is undisputed that defendant did not "call[] surgery" while still performing the colonoscopy. We therefore do not consider the issue.
[5] Plaintiff also argues the notation is admissible pursuant to N.J.R.E. 803(c)(25) (excepting from the hearsay rule "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability ... that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true"). We need not separately consider this exception because it also is premised on an initial finding that defendant was the source of the information in the notation.
[6] Despite this clear statement that the preliminary determination regarding a proffer of coconspirator hearsay was made under the admissibility, not the relevancy, prong of the Rule, in State v. Savage, 172 N.J. 374, 403, 799 A.2d 477 (2002), the Court stated that the preliminary determination of "whether there is independent proof of the conspiracy" was made pursuant to N.J.R.E. 104(b).
[7] N.J.R.E. 804(b)(6) permits, in civil proceedings only, the admission of "a statement made by a person unavailable as a witness because of death if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that it is trustworthy."
[8] The Evidence Act of 1960, N.J.S.A. 2A:84A-33 to -44, adopted as law the basic definitions, scope, and privileges of the evidence code. Biunno, Current N.J. Rules of Evidence, Preliminary Comment to the Rules (1991). The law also "set up machinery for the adoption of other rules by the joint participation of all three branches of government." Ibid. The Supreme Court proposed those rules in 1964, and, after extensive study and discussion, the rules took effect in 1967. Ibid.
[9] We recognize that N.J.R.E. 803(b)(1) also provides that a statement may be admissible if made by a party-opponent "in a representative capacity." Determining whether the declarant was in such a capacity when the statement was made does implicate mixed issues of fact and law particularly suited to the judge's initial determination of admissibility. See, e.g., Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 166 N.J.Super. 36, 43, 398 A.2d 1315 (App.Div. 1979) (holding that "extrajudicial statements and conduct" of the declarant "were binding on the original landlord's assignee and successors in interest, the plaintiff").
[10] California has enacted such a provision as part of its evidence code. Pursuant to Cal. Evid.Code § 403(a)(4), whenever "[t]he proffered evidence is of a statement ... of a particular person and the preliminary fact is whether that person made the statement," "[t]he proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact." Id. at § 403(a). If the evidence is admitted, the judge "[m]ay, and on request shall, instruct the jury to determine whether the preliminary fact exists and to disregard the proffered evidence unless the jury finds that the preliminary fact does exist." Id. at § 403(c)(1).
[11] The other portion of the notation"Dr. Rosen was performing the procedure and called surgery for poss. laparotomy"should be excised, although defendant is free to argue otherwise. We recognize that defendant may wish to advance before the jury, as she did before us, that the erroneous portion of the notation casts doubt upon Flores' ability to accurately report information provided by any source.