**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0366-24

M&N INVESTMENTS 2021,
LLC, and RELIABLE
INVESTOR CB, LLC,

     Plaintiffs-Appellants,

v.

THE LITTLE NEIGHBORHOOD
LEARNING CENTER CORP.,

     Defendant-Respondent.

_____

Submitted December 9, 2025 – Decided December 31, 2025

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2507-22.

Curcio Law, LLC, attorneys for appellants (Benjamin C. Curcio and Thomas J. Palma, of counsel and on the brief).

Pearce Law, LLC, attorneys for respondent (Randy T. Pearce, of counsel and on the brief; Christopher O. Eriksen and William R. Fenwick, on the brief).

PER CURIAM

Plaintiffs M&N Investments 2021, LLC and Reliable Investor CB, LLC appeal from an August 22, 2024 order entered following a bench trial dismissing their complaint against defendant The Little Neighborhood Learning Center Corp. We affirm.

I.

We summarize the facts developed at trial. Plaintiffs are real estate investment entities that engage in like-kind exchanges of investment property pursuant to 26 U.S.C. § 1031, commonly known as a "1031 Exchange." A 1031 Exchange permits a taxpayer to avoid recognizing capital gains on the sale of real property if the exchange occurs within 180 days, among other requirements. In this case, plaintiffs attempted to effectuate a 1031 Exchange with the proceeds of the sale of two properties: one in Jackson (the Manhattan Plaza property), and the other in Jackson Township (the Cooks Bridge property). The exchange period for the Manhattan Plaza property expired on February 27, 2022, and the exchange period for the Cooks Bridge property expired on March 1, 2022.

In November 2021, plaintiffs entered into a contract (the Contract) with defendant to purchase property on Kearny Avenue in Kearny (the Property), in anticipation of a 1031 Exchange. To effectuate the 1031 Exchange, the Contract

A-0366-24

provided the closing would occur prior to February 27, 2022, and "[f]ailure to close by that date due to the actions of the [defendant] shall constitute a breach of contract." The closing was scheduled for December 20, 2021. The Contract provided:

> The [defendant] shall be responsible for obtaining a Certificate of Occupancy [CO], Smoke Detector Certificate, and Carbon Monoxide Certificate, and other similar certificates as required by applicable law. The [plaintiffs] will not close [o]n the transaction until such required certificates are provided. []However, if the [plaintiffs] need[] to close to protect against the expiration of the 1031 Exchange closing date the parties shall agree on a reasonable escrow allowing the [defendant] to obtain the [CO] after the closing.

The Contract also provided:

> If the [defendant] is not in possession of [a Green Card from the New Jersey Department of Community Affairs (DCA)] at the time of the closing and if the [plaintiffs] need[] to close to protect against the expiration of the 1031 Exchange closing date the parties shall agree on a reasonable escrow allowing the [defendant] to obtain the [Green Card] after the closing.

The closing did not occur on December 20, and the closing date was extended to February 27, 2022. Due to unresolved repair issues identified by the DCA, defendant was unable to obtain a Green Card or CO by February 27. The parties were not able to agree on a reasonable escrow and the closing did not take place on February 27. Plaintiffs obtained an extension of the 1031

3

Exchange deadline applicable to the Manhattan Plaza property to June 27, 2022. The 1031 exchange period applicable to the Cooks Bridge property expired on March 1, 2022.

On April 13, 2022, plaintiffs filed this action in the Chancery Division, seeking specific performance and damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs alleged:

> 34. . . . as a result of [d]efendant's breach, [p]laintiffs have incurred a tax liability of approximately $94,000.00.
>
> 35. Moreover, if [d]efendant fails to cure said breach on or before June 27, 2022, [p]laintiffs will incur a tax liability of approximately $363,948.00.

Plaintiffs' application for specific performance was denied, and the action was transferred to the Law Division.

Although defendant had not obtained the Green Card or CO by June 27, 2022, the parties entered into an escrow agreement and closed that day, within the exchange period applicable to the Manhattan Plaza property. The parties agreed:

> 1. $100,000.00 from the proceeds will be held in escrow . . . subject to an escrow agreement.
>
> 2. Repair estimates will be obtained by [plaintiffs] for repairs in connection with the [CO] and the [Green Card] and forwarded to [defendant] for approval.

4

3. Once approved, invoices will be paid directly by [defendant].

4. In the event that [defendant] does make payment, [plaintiffs] shall direct the [escrow agent] to pay the funds from the escrow.

The trial judge conducted a bench trial on May 1 and 2, 2024. Plaintiffs called DCA field supervisor Jessica Jiminez and plaintiffs' owner, Manuel Munoz, as witnesses. Abdul Nouri, who owns defendant, also testified.

Jiminez testified that an inspection of the Property was conducted on December 17, 2019, resulting in a violation "[t]o repair the roof and to repair an emergency light." The Property was reinspected on November 30, 2020, at which time the emergency light violation was abated, but the roof had not been repaired. Other violations were noted, including carbon monoxide detectors, smoke detectors, and ceiling damage. On July 11, 2022, the Property was reinspected, and the prior violations were unabated. On June 14, 2023, Jiminez inspected the Property and all violations were abated.

Munoz testified he did not agree to an escrow "before the expiration of the first 1031 Exchange" because he did not "have a DCA report" or "the violations" and "the only thing that determines the cost is the report." Defendant offered "$40,000 for an escrow, which [he thought he] rejected" because he "did[not] know what the cost would be." Munoz "did ask for [a] high escrow" but

A-0366-24

defendant said "no." Munoz recalled demanding an escrow or reduction in price "of around $400,000" but did not remember if any documents supporting that demand were provided to defendant. At the time of trial, Munoz had "no idea" what happened to the $100,000 escrow.

Plaintiffs attempted to establish their alleged additional tax liability as a result of the expiration of the Cooks Bridge 1031 Exchange period by introducing a tax return prepared by an accountant through Munoz's testimony. Plaintiffs did not call their accountant as a witness because counsel "did[ not] think it was necessary to burden the [c]ourt with bringing in this [certified public accountant] for that." Based on portions of the tax return, plaintiffs claimed $85,690.30 in damages based on the expiration of the 1031 Exchange period applicable to the Cooks Bridge property.

Defendant objected, contending the tax return was inadmissible hearsay. Plaintiffs' counsel responded that he knew it was "a little bit fast and loose . . . but this is the way this game has been played, so that[ is] the way we[ are] doing it. You know, live by the sword, die by the sword." The judge permitted Munoz to testify as to the amount plaintiffs paid in capital gains tax without introducing the tax return as evidence.

6

Munoz testified he abated the DCA violations by "[h]iring a contractor and getting the work done." He hired Merfont Painters and Home Improvement LLC (Merfont) "and a couple of other[]" contractors including a roofer, an electrician, and a fire alarm company, among others, to do the work. Munoz testified plaintiffs paid Merfont $40,512 or "something like that. Something like that." He was "not sure, but [he thought] so, yeah." Munoz testified defendant "had a chance to do the work and . . . never did." Munoz "would have done [the work] for $10,000 if [he] was able to do the work." He did not recall if any invoices or estimates were sent to defendant for payment and "did[ not] know [he] had to submit anything to [defendant]."

Munoz attempted to establish the cost of the abatement work by introducing invoices and an estimate dated September 6, 2022 prepared by Merfont (the Merfont documents), along with evidence of payments made to Merfont and other contractors.[1] Defense counsel objected because there was "no authentication of the[] documents" and "no indication what was done." He argued "[t]here[ is] nothing in any of these documents that indicates that any of these repairs on the [DCA] inspection report were done by Merfont" and there

---

[1] The documents plaintiffs attempted to introduce, and which are the subject of this appeal, are not included in the appellate record.

A-0366-24

was "no reference to what was done for that amount of money." Plaintiffs' counsel responded by arguing defendant "was supposed to do" the repairs and "foisted [it] upon" plaintiffs. He argued it was "unfair" and "[i]nequitable" to force plaintiffs to "bear the cost to bring in all of these witnesses."

The judge sustained defendant's objection to the Merfont documents. She noted she did not "even know the breakdown" of the expenses and did not know "how much was paid for" or "billed for that work." "Everything is just lumped together with a total. No description of what was paid." The judge was "not sure what was for labor, what was for materials." The judge noted plaintiffs were "trying to establish another [$]85,000 for work that other people were . . . hired for and . . . trying to get it [in] through invoices of which no one [was] going to come and testify."

The judge concluded the Merfont documents were "hearsay document[s]" that did not "meet . . . the business records exception." She allowed Munoz to testify regarding what he paid the contractors but noted he "does[ not] know what happened" because he "was[ not] there to see . . . all the work that was done and why it was needed."

Nouri testified the parties were unable to reach an agreement on a reasonable escrow in February 2022 because plaintiffs "demanded a reduction

A-0366-24

in price . . . and [he] refused." Specifically, plaintiffs demanded a $300,000 credit without any "documentation . . . to justify" the demand and defendant rejected that demand. According to Nouri, defendant was prepared to close on February 27, 2022, if the parties were able to agree on a reasonable escrow amount.

In a letter dated April 4, 2022, plaintiffs demanded "an escrow or price reduction, in the amount of $500,000," which defendant also rejected. In response, defendant agreed to close subject to a $40,000 escrow and a $50,000 reduction in the purchase price. Plaintiffs rejected that offer and demanded an escrow of $300,000 and other credits. On June 27, 2022, Nouri agreed to plaintiffs' demand for a $100,000 escrow to facilitate the closing, subject to plaintiffs' obligation to "submit invoices for [him]" to "see what . . . repair[s] need[ed] to be done."

## II.

On August 22, 2024, the judge entered an order finding "no cause of action in favor of defendant" supported by a written opinion. She found "Munoz's testimony to be less credible than . . . Nouri['s], whose testimony was more reasonable and better corroborated by the proofs." As a result, "Munoz's testimony was given little weight." The judge found that plaintiffs closed on the

9

Property in time to effectuate the 1031 Exchange in connection with the Manhattan Plaza property.

As to plaintiffs' breach of contract claim, the judge concluded "[t]he evidence in the record . . . does not support that [plaintiffs] incurred tax liability in" the amount of $85,698.30. Plaintiffs "did not offer any testimony from a tax expert testifying to . . . [plaintiffs'] tax liability" and "did not provide any type of records (from the [Internal Revenue Service] or otherwise) to show that [they] were] required to pay . . . [that amount] in capital gains from the sale of this property."

The judge also found, even if plaintiffs "provided sufficient evidence" of the alleged tax liability, "it was undisputed at trial that [p]laintiff[s] could have moved forward with the closing prior to February 27, 2022, to avoid any 1031 Exchange issues." The judge found Nouri's "testimony regarding the unsubstantiated demand from . . . Munoz as to the $500[,000] escrow [was] legitimate" and "[t]he trial record is devoid of any proofs in evidence that vindicate such an exorbitant escrow amount." She determined:

> [T]he . . . Contract permitted the closing to move forward despite [d]efendant not obtaining the CO and the Green Card in order to protect against the expiration of the 1031 Exchange deadline. Specifically, the parties were required to agree on a reasonable escrow allowing the [defendant] to obtain the required

certificates after closing, or in the alternative, to agree to an appropriate credit. Yet, despite this requirement, the parties were not able to agree on a reasonable escrow prior to the expiration of the initial closing date. Here, [p]laintiff[s] could have mitigated [their] damages to prevent any future tax liability by solidifying a reasonable escrow amount as required by [the Contract], yet [they] did not do so.

As a result, the judge found plaintiffs were

not entitled to a finding in [their] favor for breach of the . . . contract, and that [p]laintiff[s] failed to mitigate [their] damages by agreeing on a reasonable escrow before the initial closing date of February 27, 2022.

Regarding abatement of the DCA violations the court found plaintiffs did not meet their burden because

[w]hile . . . Munoz was permitted to testify as to the work that he observed being done on the Property . . . he was not the general contractor who conducted the repairs. He was . . . unable to testify based on the actual repairs that were conducted pursuant to the . . . Merfont [documents]. . . . He could not provide a breakdown of the invoice, specify how much was spent on the cost of labor, or the cost of each individual repair that was conducted from the invoice.

Moreover, the Merfont [documents were] not accepted into evidence by the [c]ourt because the document[s] [are] hearsay that do[] not fall within an exception. Without any testimony from the general contractor who conducted the work, and without a properly authenticated invoice to prove the amount that [p]laintiff[s] paid for the repairs, and in light of the credibility findings of . . . Munoz's testimony, this

11

[c]ourt does not find that there is sufficient evidence to support a finding in favor of [p]laintiff[s'] damages for the abatement of the DCA violations.

Finally, the judge dismissed plaintiffs' claim for breach of the duty of good faith and fair dealing because they "did not present any evidence . . . to support [their] assertion that [d]efendant acted with a 'bad motive or intention.'"

## III.

On appeal, plaintiffs contend the judge: (1) improperly excluded the Merfont documents; and (2) "made a clear error in finding no breach of contract by disregarding [that] . . . there were two 1031 Exchange deadlines, one of which had expired long before the parties closed on the Property."[2]  We are not convinced.

We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'"  Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).  We will "'not disturb the factual findings and legal conclusions of the trial judge'

---

[2]  Plaintiffs did not address the dismissal of their claim for breach of the duty of good faith and fair dealing.  That argument is, therefore, waived.  See Pressler & Verneiro, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026) ("[A]n issue not briefed is deemed waived").

A-0366-24

unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"A trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" Belmont Condominium Ass'n v. Geibel, 432 N.J. Super. 52, 95 (App. Div. 2013) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "On appellate review, a trial court's evidentiary ruling must be upheld 'unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted.'" Id. at 95–96 (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

We are persuaded the judge properly excluded the Merfont documents. "Before a writing offered as a business record may be admitted, the proponent

must authenticate the record." State v. Berry, 471 N.J. Super. 76, 127 (App. Div. 2022) (citing State v. Marrocelli, 448 N.J. Super. 349, 364 (App. Div. 2017)). Indeed, to satisfy the business records hearsay exception, a proponent must demonstrate that "the writing [was] made in the regular course of business," it was "prepared within a short time of the act, condition or event being described," and "the source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence." N.J. Div. of Youth and Fam. Servs. v. M.C. III, 201 N.J. 328, 347 (2010) (alteration in original) (quoting State v. Matulewicz, 101 N.J. 27, 29 (1985)) (internal quotation marks omitted). "The purpose of the business records exception [to the hearsay rule] is to 'broaden the area of admissibility of relevant evidence where there is necessity and sufficient guarantee of trustworthiness.'" Konop v. Rosen, 425 N.J. Super. 391, 403 (App. Div. 2012) (quoting Liptak v. Rite Aid, Inc., 289 N.J. Super. 199, 219 (App. Div. 1996)).

Plaintiffs failed to present a witness competent to authenticate the Merfont documents. Munoz did not create the documents and could not testify to facts sufficient to satisfy the business records hearsay exception. Specifically, he could not establish the documents were made in the regular course of Merfont's

14

business or that they were sufficiently trustworthy. There is no reason for us to conclude the judge erred by excluding the Merfont documents.

Plaintiffs' claim that the judge incorrectly dismissed their breach of contract claim because she "failed to distinguish the two separate 1031 Exchange deadlines" is incorrect. Rather, in addition to noting plaintiffs closed on the Property in time to effectuate the 1031 Exchange applicable to the Manhattan Plaza property, she also dismissed that cause of action because plaintiffs failed to: (1) provide competent evidence of their alleged increased tax liability; (2) provide competent evidence of the expenses allegedly incurred for abatement work performed at the Property; and (3) mitigate their damages by agreeing to a reasonable escrow amount prior to the first scheduled closing date.

The judge's credibility findings are entitled to our deference. Her factual findings are adequately supported by the record, and she properly applied those facts to the law. There is no reason for us to disturb the judge's decision to dismiss plaintiffs' complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15                                                          A-0366-24