107 N.J. Super. 590 (1969)
259 A.2d 719
JOAN M. PHILLIPS, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF DONALD M. PHILLIPS, DECEASED, AND JOAN M. PHILLIPS, INDIVIDUALLY, PLAINTIFF-RESPONDENT,
v.
ERIE LACKAWANNA RAILROAD COMPANY, ET AL., DEFENDANTS, AND NEW JERSEY AND NEW YORK RAILROAD COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1969.
Decided December 11, 1969.
*592 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Charles P. DeYoe argued the cause for plaintiff (Messrs. DeYoe, DeYoe and Guiney, attorneys).
Mr. Charles W. Hutchinson argued the cause for defendant New Jersey and New York Railroad Company (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys)
The opinion of the court was delivered by CONFORD, P.J.A.D.
Defendant New Jersey and New York Railroad Company appeals from a judgment entered on a jury verdict in the amount of $200,000 in plaintiff's favor. This is a wrongful death action, and it arises out of a grade-crossing accident on July 13, 1966 wherein a train operated by employees of defendant collided with an automobile being driven by plaintiff's decedent at the Park View Drive crossing of the Erie Lackawanna tracks in Hillsdale.
There must be a reversal because of the erroneous admission in evidence, over defendant's objection, of the report of a hearing examiner of the Board of Public Utility Commissioners dated March 21, 1967, together with a confirmatory decision and order of the Board, based on evidence received at hearings duly conducted by the officer, wherein it was found that "visibility [was] obstructed" at the crossing, that two accidents had occurred at the location, and that there should be installed at the crossing automatic flashing lights and bells with appropriate warning signs.
*593 Before stating the basis for that determination, we dispose of certain other grounds of appeal raised by defendant.
It is argued that contrary to plaintiff's representation during trial that there would be no contention of negligent operation of the train (but only of maintenance of an extra-hazardous crossing), there were allusions in plaintiff's summation to undue speed of the train and untruthfulness of the engineer's testimony. We think any potentially prejudicial result in this regard was obviated by the court's instructions to the jury.
Defendant contends there was insufficient evidence that the crossing was extra-hazardous to warrant submission of that issue to the jury. We have read the proofs in full and are constrained to disagree.
It is also asserted that there should have been an involuntary dismissal for failure on the part of plaintiff to establish causal relationship between any extra-hazardous condition of the crossing and the occurrence of the collision. The position is that the accident was exclusively the result of decedent's contributory negligence. Again, we disagree. The issue of causal relationship was one for jury resolution.
Finally, it is maintained that judgment should have been entered for defendant because the decedent was guilty of contributory negligence as a matter of law, and that, in any event, there was error in denial of the motion for a new trial. We think it was open to the jury not to find contributory negligence under all the concomitant circumstances, including the hot weather and decedent's use of the air conditioning in the car, requiring closing of the car windows. There was no error in the denial of the new trial insofar as based on matters other than introduction of the Public Utility proceedings in evidence.
We proceed to consideration of the latter issue.
The PUC report, decision and order proffered and received in evidence were obviously hearsay but were received in evidence, over objection, under the purported authority of Evidence Rule 63(15) ("Reports and findings of public *594 officials"), one of the exceptions to the hearsay rule, adopted June 6, 1967, effective September 11, 1967, a date prior to the trial of this action. This reads:
Subject to Rule 64, a statement is admissible if in the form of (a) a written statement of an act done, or an act, condition or event observed by a public official if it was within the scope of his duty either to perform the act reported or to observe the act, condition or event reported and to make the written statement, or (b) statistical findings made by such a public official whose duty it was to investigate the facts concerning the act, condition or event and to make statistical findings.
Evidence Rule 64 provides that a written statement admissible under Rule 63(15) may be excluded if fair notice of the intention to offer it was not afforded the adverse party. Fair notice was given here.
The broad subject of admissibility of official statements containing factual conclusions derived from investigatory proceedings has constituted a controversial area in the law of evidence and has evoked differing points of view. McCormick, Evidence § 294, at 616 (1954); 5 Wigmore, Evidence, (3d ed. 1940), §§ 1670-1672, pp. 672-703. Report of Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey, at 146-149 (1955) (hereinafter, "1955 Supreme Court Committee Report"); Report of the New Jersey Supreme Court Committee on Evidence, at 189-192 (March 1963), (hereinafter, "1963 Supreme Court Committee Report"). Direct case authority in New Jersey on the specific question stated is sparse, see McComish v. DeSoi, 83 N.J. Super. 505, 515-516 (App. Div. 1963), rev'd in part on other grounds, 42 N.J. 274 (1964), but in the comparable area of reports by officials offered under the business records exception to the hearsay rule our courts have taken a rather cautious approach in respect of admissibility of conclusionary data contained in such reports. See Brown v. Mortimer, 100 N.J. Super. 395, 405 (App. Div. 1968); Rogalsky v. Plymouth Homes, Inc., 100 N.J. Super. 501, 506 (App. Div. 1968), certif. den. 52 N.J. 167 *595 (1968). Cf. Fagan v. City of Newark, 78 N.J. Super. 294, 316-318 (App. Div. 1963).
However, we need not enter into the policy debate reflected in the source data cited above, for we are satisfied that the historical background of the adoption in this State of Evidence Rule 63(15) demonstrates clearly the intent of the drafters not to allow in evidence conclusionary material resulting from official investigations embodied in statements or reports of the official or agency involved. We expressly distinguish statements properly admissible under Evidence Rule 63(13) "(Business entries)," a rule not argued or deemed by us to be applicable here.
The project for a comprehensive revision in New Jersey of the rules of evidence was initiated by the 1955 Supreme Court Committee. The report of that committee, as well as later such efforts, was based upon the Uniform Rules of Evidence proposed in 1953 by the National Conference of Commissioners on Uniform Laws. Hearsay evidence was excluded under Rule 63 of the Uniform Rules, but exceptions thereto were carved out in 31 subparagraphs. One of these, (15), headed "Reports and Findings of Public Officials", reads:
Subject to Rule 64 written reports or findings of fact made by a public official of the United States or of a state or territory of the United States, if the judge finds that the making thereof was within the scope of the duty of such official and that it was his duty (a) to perform the act reported, or (b) to observe the act, condition or event reported, or (c) to investigate the facts concerning the act, condition or event and to make findings or draw conclusions based on such investigation; * * *
Perusal of the foregoing and of New Jersey Evidence Rule 63(15) makes it evident that (1) the reference in the uniform rule to findings or conclusions based upon an official investigation is conspicuously absent from Evidence Rule 63(15) now in effect in this State (except as to statistical findings); and (2) the uniform rule would prima facie render admissible the PUC documents under contention in this case. The 1955 *596 Supreme Court Committee report annotation states, in reference to Uniform Rule 63(15):
The common law [official finding] exception (1) rested upon the premise that public officials are impartial recorders of their acts and observations, and (2) excused the appearance of the officials largely to avoid drains upon their time. The proposed expansion of the rule (a) to eliminate the requirement of personal knowledge and (b) to include findings or conclusions based upon investigation is consonant with the premise of official impartiality, but expands the evidentiary area to limits which it is difficult to estimate. The provision for notice in Rule 64, with the right, apparently implicit, to examine the official at or before trial, would seem to run counter to the common law objective of preserving the working time of the reporting officials. [at 148]
In reference to the last observation quoted, regard should also be had for N.J.S.A. 48:2-38 which provides:
No member or employee of the board [Public Utility Commissioners] shall be required to give testimony or to furnish documents in a civil suit to which the board is not a party, with regard to information obtained by him in the discharge of his official duty.
The 1955 Supreme Court Committee Report recommended adoption of Uniform Rule 63(15), but intimated the possible desirability of exclusion of reports by officials acting in judicial or quasi-judicial proceedings, and, further, of a number of discretionary restrictions imposable by the trial court where the investigational findings or conclusions bore directly "upon a substantial issue in dispute."
In 1956 a legislative commission (J.R. 15, 1955) headed by Judge Bigelow recommended the following version of Rule 63(15):
Subject to Rule 64 written reports or findings of fact made by a public official of the United States or of a state or territory of the United States, other than officials acting in a judicial or quasi-judicial capacity, are admissible if the judge finds that the making thereof was within the scope of the duty of such official and that it was his duty (a) to perform the act reported, or (b) to observe the act, condition or event reported, or (c) to investigate the facts concerning the act, condition of event and to make statistical findings.
*597 It is to be noted that this commission not only excluded judicial and quasi-judicial reports but also "conclusions" and "findings" of officials, generally, based upon investigations, except as to statistical findings.
In 1958 and 1959 there was extended discussion in legal circles of a potential joint Legislative-Supreme Court approach to the formulation of revised evidence rules in order to meet the constitutional problem of rule-making jurisdiction posed by Winberry v. Salisbury, 5 N.J. 240 (1950). See 81 N.J.L.J. 16 (1958); 82 N.J.L.J. 500 (1959); 82 N.J.L.J. 560 (1959). This led to the adoption of the Evidence Act of 1960 (L. 1960, c. 52). That act revised the rules on privilege and the "Dead Man's Act" (N.J.S.A. 2A:81-2), made miscellaneous other changes in evidence statutes, and enacted a mechanism by which rules of evidence could be proposed by the Supreme Court and become law if not rejected or modified by joint resolution passed by both legislative houses and signed by the Governor.
In 1962 the Supreme Court established a new committee to go forward with the work of evidence rules revision, and there eventuated the 1963 Supreme Court Committee Report. The version of Rule 63(15) proposed in this report basically followed the uniform rule as originally promulgated (see the text, supra) except only that it excluded reports or findings by officials acting in a judicial or quasi-judicial capacity and confined clause (c) (investigative findings or conclusions) to use in civil proceedings. The Committee comment (at 189-190) states:
It is as to paragraph (c), dealing with evaluative reports in civil cases only, where the opinions or conclusions of the investigator are often expressed and where the findings are based sometimes on hearsay, that serious questions have been raised. It has been argued that to let in findings based on someone else's investigation after the fact is to destroy the judicial process and that the suggestion is an extreme one. On the other hand, the argument for the Rule is to the effect that reports by investigating officers are highly reliable, and that the courts should take full advantage of the facilities provided them by the resources of various investigating agencies. The investigator is *598 usually on the scene at a time when the investigation is facilitated; the investigations made by litigants are often stale by comparison. As a general rule, the official investigator is competent and is a specialist with expertise in the subject of the investigation thus guaranteeing accurate reports. He is usually objective, thus insuring against bias in reporting. These factors tend to insure reliability.
The comment further suggests that a protection against unreliable investigative reports resides in the power of the judge under Rule 45 to exclude relevant evidence where th judge finds that its probative value is outweighed by dangers of prejudice or of misleading the jury (at 190-191).
The 1963 report was subjected to intense review at the Judicial Conference and by individual justices of the Supreme Court. On September 14, 1964 the Supreme Court announced the promulgation of the rules, effective July 1, 1965,[1] subject to the provisions of the Evidence Act, 1960. Rule 63(15) as then promulgated read as follows:
Subject to Rule 64, a statement is admissible if in the form of (a) a written report or statement of fact made by a public official of the United States or of a state or territory of the United States, if the making thereof was within the scope of his duty either to perform the act reported or to observe the act, condition or event reported, or (b) statistical findings made by such a public official whose duty it was to investigate the facts concerning the act, condition or event and to make statistical findings.
Here we observe the outright desertion of the principle of admissibility of all investigatory findings or conclusions and a reversion to the limitation to statistical findings last theretofore articulated in the 1956 report of the Bigelow Legislative Commission, supra, and also supported by the March 1963 Report of the Project Committee on Proposed Rules of Evidence of the Essex County Bar Foundation (at 44-45).
A Rules of Evidence Study Commission was set up by the Legislature (SCR 28, 1966; SCR 1, 1967) to evaluate the *599 1964 proposals of the Supreme Court. At a conference on March 23, 1967 the commission and the Court agreed upon certain modifications and changes in the rules, including some purely formal changes in the wording of Rule 63(15) which effected no substantial alteration in the sense of the version promulgated by the court in September 1964. Additional formalistic requirements were thereafter agreed upon in regard to Rule 63 (15), and that rule, along with the other evidence rules also concurred in by the study commission and the Supreme Court, was formally adopted by Joint Resolution No. 5 of 1967, approved May 9, 1967. The Supreme Court's formal concurrence came in June 1967. The version of Rule 63(15) thus effectuated, and now in effect, has been quoted hereinabove.
The significant change in the rule draft from the version in the 1963 Supreme Court Committee Report to that promulgated by the court itself in September 1964 signals an unmistakable intent to exclude from evidence factual findings or conclusions, aside from statistical findings, by official investigatory bodies, insofar as admissibility is posited upon the exception to the hearsay rule constituted by Rule 63(15). Without the benefit of that rule, the PUC documents here involved are inadmissible hearsay and represent precisely the type of conclusionary statement or report which it was the intention of the rule-makers to exclude. This is made evident by the Committee comment accompanying the 1963 Supreme Court Committee Report, quoted partly above, which strongly advocates admissibility of this kind of report, as against the exclusion in the final draft of the rule of the 1963 verbiage embodying the purport of the uniform rule draft (to investigate the facts concerning the act, condition or event and to make findings or draw conclusions based on such investigation). The exclusionary intention is emphasized by the narrowness of the class of investigatory findings allowed  i.e., "statistical findings."
In our view, the implied bar of the rule, as we interpret it, extends both to the factual conclusions of the hearing *600 examiner's report relevant to the alleged hazardous condition of the crossing and to the decision and order of the Board directing the installation of the protective lights and bells. Neither represents a statistical finding. The latter plainly implies a conclusion that the devices mentioned are necessary to prevent unsafety of the crossing, and this is very obvious when the hearing examiner's report and the confirmatory Board decision and order are considered together, as they must be, since the decision and order approves the findings and conclusions of the hearing examiner.
As to the prejudicial effect of the admission of the documents there can be no doubt. The conclusions of the PUC concerned the very issue here being tried  i.e., the extra-hazardous nature of the crossing. Plaintiff's expert witness took the contents of the report into consideration. Defendant at trial vigorously contested the contention of extra-hazardousness of the crossing, particularly from the direction of decedent's approach. The jury were told in the court's charge that they could consider the PUC documents in relation to that issue, although they were left free to disregard them or to give them such weight as they deemed fit.
Plaintiff urges that at trial defendant's objection to these exhibits was limited to their irrelevance and that it should not be permitted on appeal to expand the basis of objection to inadmissibility under Rule 63(15). It must be conceded that defendant is not immune to just criticism with regard to its failure at trial to make the point that the rule does not authorize admission of conclusions of investigatory bodies (apart from statistical findings). However, plaintiff was not prejudiced thereby. She defended the admissibility of the exhibits solely on the basis of Rule 63(15); that was the basis accepted by the trial court in overruling defendant's objections and, as indicated above, the rule does not justify the admission of the documents, which are otherwise hearsay, and their introduction worked serious prejudice to defendant's case. The interests of justice require *601 reversal and a new trial free of the taint of the introduction of this material.
We may add that we do not regard the stated objection of defendant to the PUC documents as irrelevant to the issues as meritorious. They were quite relevant, and in this lies their prejudicial effect, since they were incompetent.
Reversed and remanded for a new trial. No costs.
NOTES
[1] The effective date was postponed by statute, the rules ultimately taking effect September 11, 1967.