69 A.3d 131

ROZELLE E. VILLANUEVA, PLAINTIFF–APPELLANT, AND JOSE
L. VILLANUEVA, PLAINTIFF, v. MATTHEW J. ZIMMER, DE-
FENDANT, AND CARMEN DEROSA, DEFENDANT–RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued November 27, 2012—Decided June 21, 2013.

Before Judges MESSANO, OSTRER and KENNEDY.

*William L. Gold* argued the cause for appellant Rozelle E. Villanueva (*Bendit Weinstock,* attorneys; *Mr. Gold,* of counsel; *Sherri Davis Fowler,* on the brief).

*James J. Pieper* argued the cause for respondent Carmen DeRosa (*Litvak & Trifiolis,* attorneys; *Mr. Pieper,* on the brief).

*Bruce H. Stern* argued the cause for amicus curiae New Jersey Association for Justice (*Stark & Stark,* attorney; *Mr. Stern,* of counsel and on the brief).

The opinion of the court was delivered by

KENNEDY, J.A.D.

Plaintiff Rozelle A. Villanueva appeals from the entry of judgment for defendant Carmen DeRosa dismissing her personal injury complaint following a jury verdict that plaintiff did not sustain an injury proximately caused by the vehicle collision at

issue in this litigation. Prior to trial, the per quod claim of Jose L. Villanueva was dismissed, and summary judgment was entered dismissing the complaint as to defendant Matthew J. Zimmer. Defendant DeRosa stipulated he was liable for the collision, and trial proceeded on the issues of proximate cause of injury and damages.

On appeal, plaintiff argues that

POINT [1] THE COURT BELOW ERRED IN EXCLUDING EVIDENCE OF THE SOCIAL SECURITY ADMINISTRATION'S DETERMINATION THAT PLAINTIFF WAS PERMANENTLY DISABLED AND UNABLE TO WORK.

POINT [2] THE COURT BELOW ERRED IN DISALLOWING THE USE OF THE SOCIAL SECURITY ADMINISTRATION'S DETERMINATION IN THE CROSS-EXAMINATION OF DEFENDANT'S EXPERT WITNESSES.

POINT [3] THE COURT'S INSTRUCTIONS TO THE JURY WERE INADEQUATE WITH RESPECT TO ITS CONSIDERATION OF THE SSA'S DETERMINATION THAT PLAINTIFF WAS DISABLED AND UNABLE TO WORK.

Having considered these arguments in light of the record and the applicable law, we affirm.

## I.

We shall first set forth the facts derived from the trial record. Thereafter, we shall set forth the facts pertaining to the controversy arising from plaintiff's efforts to introduce at trial the Social Security Administration's determination that she was disabled.

## A.

On October 28, 2005, plaintiff was driving north on Route 287 in Hanover Township and had stopped due to heavy traffic. Zimmer was stopped in a pickup truck behind plaintiff when DeRosa, driving a van, struck the rear of Zimmer's truck, pushing it into the rear of plaintiff's vehicle. After the accident, plaintiff told the responding State police officer that she was "okay" and drove away from the scene. However, shortly thereafter, plaintiff began to feel sore and went to the emergency room at a local hospital,

where she was examined and released. On a follow-up visit to the emergency room, plaintiff complained of difficulty walking and was given crutches.

Approximately four months after the accident, plaintiff began treatment with a chiropractor for back and neck pain. Feeling she was not getting relief, plaintiff was referred to Richard Kaul, M.D., a specialist in "interventional pain and minimally invasive spine surgery." Kaul opined that plaintiff had bilateral L5/S1 radiculopathy[1] and tears in the intervertebral discs at L4/5 and L5/S1. He treated plaintiff with caudal and epidural steroid injections in her lower back and undertook manipulation of her spine under anesthesia. These treatments afforded plaintiff only temporary relief, however.

Kaul recommended spinal fusion therapy to stabilize plaintiff's spine and relieve her back pain, but plaintiff declined the surgery, claiming she could not afford it. Michael D. Freeman, Ph.D., a forensic epidemiologist, opined that the accident of October 28, 2005, caused plaintiff's injuries.

Plaintiff testified at trial that she did not return to work as a seamstress because of her pain and her inability to perform her job functions. She stated her job required her to stand for long periods, carry bolts of cloth and operate sewing machines with a foot pedal.

Three doctors testified for the defense at trial. Barry Levine, M.D., an orthopedic surgeon, testified that plaintiff was "massively obese" and was 5'5" tall and weighed over 300 pounds at the time of the accident. He stated he found no objective evidence of injuries resulting from the accident and that plaintiff's back problems and complaints of pain were common in overweight individuals. Roger Berg, M.D., a radiologist, stated that plaintiff's Magnetic Resonance Imaging (MRI) films showed no evidence of any herniated discs, annular tears or disc displacement. He added

---

[1] "Radiculopathy" is a "disorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1622 (28th ed.2006).

that plaintiff did have age-related disc degeneration. Elliot Grossman, M.D., a neurologist, testified that he found no evidence of any neurologic injury related to the accident.

### B.

On June 24, 2007, the Social Security Administration (SSA) issued a four-page "Notice of Award" to plaintiff which stated "[y]ou are entitled to monthly disability benefits" and that "[w]e found that you became disabled under our rules on October 28, 2005." The notice set forth the amount of the disability payments plaintiff would receive, and explained, "[t]he decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits." The notice also stated, "[d]octors and other trained staff decided that you are disabled under our rules.... [T]his decision must be reviewed at least once every [three] years[,]" and benefits would "end if you are no longer disabled." However, the notice contained no findings of fact.

Prior to trial, defense counsel raised a number of in limine motions, including, apparently, an objection to plaintiff introducing any evidence or testimony pertaining to the SSA disability determination. The trial judge reserved decision on a number of these motions. Nonetheless, during his opening statement, plaintiff's attorney stated, "Now, as the result of the injuries [plaintiff] can't work. And how do you know she can't work? The Social Security Administration has determined that she is totally disabled[,]" prompting an objection from defense counsel. The trial judge instructed counsel not to say anything further on the subject until she ruled on defendant's motion.

The next day, out of the presence of the jury, the trial judge ruled on defendant's motion to preclude reference to the SSA determination. Plaintiff, relying on *Golian v. Golian*, 344 *N.J.Super.* 337, 781 *A.*2d 1112 (App.Div.2001), argued that the determination creates a rebuttable presumption that plaintiff was disabled

and unable to work as a consequence of the accident. The trial judge disagreed and stated, in part:

> [The SSA] did not have the benefit of ... the medical reports ... of the defense doctors here. And what this case involves is plaintiff's claim that she suffered a permanent injury as a result of this accident that resulted in her inability to work. Those are the issues that this jury needs to determine based on the evidence presented here, not evidence of a determination that was made by ... [the SSA] that did not have the benefit or the evidence that might have suggested that this disability is not—or was not caused by this accident. That being said so, it cannot come in for the proposition to establish that the plaintiff is presumed to be permanently disabled which is what the plaintiff wants to use this finding for.... What plaintiff needs to establish for this jury is that she did in fact sustain a permanent injury. Plaintiff has the proofs of that contention with the testimony of Dr. Kaul, but it's for this jury to determine whether she does in fact have a permanent injury that was caused by this collision and that resulted in her disability.... [Plaintiff is] allowed to testify that she has not been able to return to work. She has not returned to work. She's been unable to do so.

Plaintiff then argued she should be allowed to use the determination to cross-examine defendant's orthopedic expert, but the trial judge again disagreed and advised counsel that she would not allow through the "back door [what] you can't get in through the front door."

The trial judge also denied plaintiff's subsequent motion for reconsideration, as well as defendant's motion for a mistrial based on plaintiff's reference to the SSA determination on the opening statement. Counsel did not request a curative instruction.

During his closing argument, defense counsel repeatedly stressed that plaintiff presented no medical testimony that she was unable to work, and stated, "[n]o one but the plaintiff says that she can't work anymore." He added that plaintiff "freely admits" she never looked for a job after the accident, and did not produce a vocational expert. Before his closing argument, plaintiff's counsel addressed the judge out of the presence of the jury and, referring to the defense closing, stated, "the evidence of [plaintiff's] disability was prevented from coming in in the form of Social Security on the very arguments [defense counsel] just made." He then requested, "Social Security said she's disabled and that's a finding ... now I need a charge from your honor that says that."

After hearing argument from both counsel, the trial judge ruled, in pertinent part:

> [A]lthough something can be determined to be inadmissible, if a party opens the door, by—unfairly, using either evidence or comments, even in argument, unfairly comments on the evidence such that the door is opened to what would otherwise be inadmissible evidence, the Court has an obligation to recognize as much.
>
> . . . .
>
> [Defense counsel] has chosen to attack the plaintiff's credibility extensively regarding the idea that she's not seeking work for reasons unrelated to a lack of ability to work.
>
> And for that reason, I find the door has been opened for the jury. . . .
>
> I'm going to be very specific as to what the jury can be told and that is that the Social Security Administration based on submissions provided by the plaintiff, found that the plaintiff became disabled on October 28th, 2005. That is what the jury will be permitted to hear.

Plaintiff's counsel then requested the trial judge to charge the jury the SSA determination gives rise to a presumption:

> Judge, I understand your Honor's ruling. For the record, I think the proper way to do it is to charge the jury on presumptions, whatever that Evidence Rule is or whatever the model jury charge on presumptions and tell them that the presumption is rebuttable that the Social Security determination is correct.

The judge declined the request and advised the jury as follows:

> Ladies and Gentlemen, before we proceed with the plaintiff's closing argument, I want to instruct you with respect to certain comments that were made during the defendant's closing arguments.
>
> You heard some comments regarding plaintiff's alleged disabilities or inabilities. I want to instruct you that you can consider, although it is ultimately your determination to make, as to what if any, abilities plaintiff does or doesn't have as a result of the accident or collision that occurred.
>
> In other words, you need to determine what, if any, effect the collision had on plaintiff's abilities. But you are permitted and I am instructing now that you should be informed that the Social Security Administration has found that the plaintiff became disabled on October 28, 2005 based on submissions plaintiff had made and that—however, that determination is reviewed periodically.
>
> And again, it is for you to determine however, whether any ability or disability or—or lack of ability resulted from the collision that is the subject of this lawsuit.
>
> But Social Security has made a . . . determination, a finding that the plaintiff became disabled and that is subject to periodic review.

During his summation, plaintiff's counsel stated, "what's the best evidence you have that [plaintiff] can't go back to work? What the judge just told you, the Social Security Administration

has decided that she is disabled." He added that "to buy defendant's case[,]" the jury would have to believe plaintiff lied and that "Social Security screwed up."

Following the judge's charge on the law, the jury returned its unanimous verdict, finding that plaintiff did not "sustain an injury as a proximate result of the collision on October 28, 2005." Judgment was entered for defendant and this appeal followed.

## II.

Relying primarily upon *Golian, supra,* plaintiff argues that the SSA determination "was admissible and created a presumption ... as to the fact issues which the defense had contested as part of its case—plaintiff's disability and inability to work." Plaintiff also argues that the trial judge erred in denying her request to "use the SSA determination in examining defendant's witnesses concerning their opinions that plaintiff had suffered no injury[.]" Plaintiff adds that the jury was "entitled to hear what explanation [defendant's] experts may have had for suggesting, completely contrary to the fact that [the] SSA has determined plaintiff to be disabled, that plaintiff was not injured."

Finally, plaintiff argues that the trial judge erred in her instruction to the jury on the SSA determination following defendant's closing. Plaintiff asserts that the instruction failed to advise the jury that the determination must be considered as presumptive "prima facie evidence of one's inability to work and to earn income," subject to rebuttal by defendant.

## A.

While we ordinarily review a trial court's evidence ruling for an abuse of discretion, *Hisenaj v. Kuehner,* 194 *N.J.* 6, 12, 942 *A.*2d 769 (2008), our review is de novo when the trial court "fails to apply the proper test in analyzing the admissibility of proffered evidence." *Konop v. Rosen,* 425 *N.J.Super.* 391, 401, 41 *A.*3d 773 (App.Div.2012) (citing Pressler & Verniero, *Current N.J. Court*

*Rules,* comment 4.6 on *R.* 2:10–2 (2012)). Given the arguments raised on appeal, we review the trial court's ruling in this case under the stricter, de novo standard.

At the outset, we should observe that we are not dealing with the concepts of res judicata or collateral estoppel. Defendant was neither a party, nor in privity with a party, to the proceedings before the Social Security Administration. Res judicata is a broad common-law doctrine encompassing the modern-day theories of claim preclusion and issue preclusion. *Velasquez v. Franz,* 123 *N.J.* 498, 505, 589 *A.*2d 143 (1991); *Innes v. Carrascosa,* 391 *N.J.Super.* 453, 488–89, 918 *A.*2d 686 (App.Div.), *certif. denied,* 192 *N.J.* 73, 926 *A.*2d 857 (2007). "The doctrine evolved in response to the specific policy concerns of providing finality and repose for the litigating parties; avoiding the burdens of relitigation for the parties and the court; and maintaining judicial integrity by minimizing the possibility of inconsistent decisions regarding the same matter." *Velasquez, supra,* 123 *N.J.* at 505, 589 *A.*2d 143 (citations omitted).

"In essence, the doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." *Ibid.* (citing *Roberts v. Goldner,* 79 *N.J.* 82, 85, 397 *A.*2d 1090 (1979)). Put differently, " 'when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation.' " *Culver v. Ins. Co. of N. Am.,* 115 *N.J.* 451, 460, 559 *A.*2d 400 (1989) (quoting *Lubliner v. Bd. of Alcoholic Beverage Control,* 33 *N.J.* 428, 435, 165 *A.*2d 163 (1960)).

Collateral estoppel, also known as issue preclusion, is a " 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.' " *Tarus v. Borough of Pine Hill,* 189 *N.J.* 497, 520, 916 *A.*2d 1036 (2007) (quoting *Sacharow v. Sacharow,* 177

*N.J.* 62, 76, 826 *A.*2d 710 (2003)). The application of collateral estoppel " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *State v. Brown,* 394 *N.J.Super.* 492, 501, 927 *A.*2d 569 (App.Div.2007) (quoting *Ashe v. Swenson,* 397 *U.S.* 436, 443, 90 *S.Ct.* 1189, 1194, 25 *L.Ed.*2d 469, 475 (1970)).

In *Olivieri v. Y.M.F. Carpet, Inc.,* 186 *N.J.* 511, 897 *A.*2d 1003 (2006), the Court explained that while collateral estoppel can apply to issues decided by administrative tribunals if all the requirements for the doctrine are found to exist, nonetheless, the doctrine, being equitable in origin, "will not be applied when it is unfair to do so." *Id.* at 521–22, 897 *A.*2d 1003 (citation and quotation marks omitted). There, the Court declined to apply the doctrine to preclude the defendant in an action under Conscientious Employee Protection Act, *N.J.S.A.* 34:19–1 to –8, from arguing that plaintiff voluntarily left her employment, despite a contrary finding by the Board of Review on plaintiff's unemployment claim. *Id.* at 525, 897 *A.*2d 1003. The Court based its determination on the differences "in the quality and extensiveness of the procedures followed" in administrative unemployment determinations and in Law Division actions. *Ibid.*

■ In the case before us, plaintiff expressly eschews reliance upon either res judicata or collateral estoppel, recognizing the critical absence of the element of identity of parties or privies. Rather, as noted, relying primarily upon *Golian, supra,* plaintiff argues that she is entitled to bring before the jury the fact that she had been declared disabled through an SSA determination, and to have that determination declared presumptive evidence of disability and inability to work, subject only to rebuttal by the defense. We begin our analysis with the *Rules of Evidence* and the principle that "hearsay statements that do not conform to the exceptions specifically enumerated in the *Rules of Evidence* are not admissible." *State v. Rose,* 206 *N.J.* 141, 175, 19 *A.*3d 985 (2011).

██ It is clear that the SSA determination is hearsay and was proffered explicitly for the truth of the finding therein. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). *See Muench v. Twp. of Haddon,* 255 *N.J.Super.* 288, 305–06, 605 *A.*2d 242 (App. Div.1992) (holding that a report of findings by the New Jersey Division of Civil Rights did not qualify for any hearsay exception in a discrimination case brought under the LAD); *Phillips v. Erie Lackawanna R.R. Co.,* 107 *N.J.Super.* 590, 593, 259 *A.*2d 719 (App.Div.1969) (holding that in a personal injury action against a railroad, a report containing the conclusions of a hearing examiner of the Public Utilities Commission regarding an alleged hazardous railroad crossing was "obvious hearsay"), *certif. denied,* 55 *N.J.* 444, 262 *A.*2d 700 (1970). "*N.J.R.E.* 802 starkly explains that '[h]earsay is not admissible except as provided by [the Evidence Rules] or by other law.' " [2] *State v. Buda,* 195 *N.J.* 278, 292, 949 *A.*2d 761 (2008) (quoting *N.J.R.E.* 802).

The only hearsay exception that might apply in this case is the "public records exception" under *N.J.R.E.* 803(c)(8).[3] Under the

---

[2] "The 1991 Supreme Court Committee Comment to this Rule makes clear that 'other law' refers to statutory and constitutional law." Biunno, Weissbard & Zegas, *Current N.J. Rules of Evidence,* comment on *N.J.R.E.* 802 (2013).

[3] *N.J.R.E.* 803(c)(6) can also support admission of some government reports in civil actions, *see Konop, supra,* 425 *N.J.Super.* at 403–04, 41 *A.*3d 773 and certain records may be admissible under either *N.J.R.E.* 803(c)(6) or (8). *State v. Zalta,* 217 *N.J.Super.* 209, 214, 525 *A.*2d 328 (App.Div.1987). Indeed, *N.J.R.E.* 803(c)(6) refers to a record made in the "regular course of business" and *N.J.R.E.* 801(d) expressly defines "business" to include "activities of governmental agencies." Nonetheless, other conditions for admissibility of evidence under *N.J.R.E.* 803(c)(6) would not support admission of the SSA determination at issue here. Among other things, a declaration of disability made two years after the accident cannot be considered to have been prepared "within a short time of the act, condition or event being described." *State v. Matulewicz,* 101 *N.J.* 27, 29, 499 *A.*2d 1363 (1985). Also, *N.J.R.E.* 803(c)(6) is expressly subject to *N.J.R.E.* 808, which excludes embedded expert opinions if the declarant is not produced as a witness, unless the trial judge finds the circumstances "tend to

"public records exception" to the hearsay rule, a party seeking to admit a hearsay statement must demonstrate that it is either

(A) a statement contained in a writing made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement, or (B) statistical findings of a public official based upon a report of or an investigation of acts, conditions, or events, if it was within the scope of the official's duty to make such statistical findings, unless the sources of information or other circumstances indicate that such statistical findings are not trustworthy.

[*N.J.R.E.* 803(c)(8).]

The rationale of this Rule is twofold:

(1) the special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed, *State v. Fortin,* 189 *N.J.* 579, 605 [917 *A.2d* 746] (2007); *N.J. D.E.P. v. Duran,* 251 *N.J.Super.* 55, 65 [596 *A.2d* 1090] (App.Div.1991); *State v. Hudes,* 128 *N.J.Super.* 589 [321 *A.2d* 275] (Cty.Ct.1974); 5 *Wigmore,* Evidence § 1632 (Chadbourn rev.1974), and (2) to avoid the necessity of compelling a public official to leave his daily functions to testify as to an event which he will most likely not remember. [*Duran, supra,* 251 *N.J.Super.* at 65, 596 *A.2d* 1090; *Wigmore,* at § 1631.]

[Biunno, Weissbard & Zegas, *Current N.J. Rules of Evidence,* comment 1 on *N.J.R.E.* 803(c)(8) (2013).]

In *Phillips, supra,* 107 *N.J.Super.* 590, 259 *A.2d* 719, we reviewed in detail *Evid. R.* 63(15), the predecessor to *N.J.R.E.* 803(c)(8). We held that the factual conclusions of a hearing examiner of the Public Utility Commission respecting the hazards posed by a particular grade crossing, and the Board's decision and order directing installation of protective lights and bells at the crossing, were hearsay and were not admissible under *Evid. R.* 63(15) in a civil damage action arising out of an accident at the crossing. Judge Conford writing for the court, noted, "[t]he broad subject of admissibility of official statements containing factual conclusions derived from investigatory proceedings has constituted

establish [the opinion's] trustworthiness." *See Konop, supra,* 425 *N.J.Super.* at 403, 41 *A.3d* 773; *cf. Smith v. Ithaca Corp.,* 612 *F.2d* 215, 222 (5th Cir.1980). Here, plaintiff never tried to establish that the circumstances of the SSA determination met the "trustworthiness" standard under *N.J.R.E.* 808.

a controversial area in the law of evidence and has evoked differing points of view." *Id.* at 594, 259 *A.*2d 719.

Judge Conford explained that the historical background preceding the adoption of *Evid. R.* 63(15) "demonstrate[d] clearly the intent of the drafters not to allow in evidence conclusionary material resulting from official investigations embodied in statements or reports of the official or agency involved." *Ibid.* A review of the development of our present *N.J.R.E.* 803(c)(8) makes very clear, as described by Judge Conford, *id.* at 595–99, 259 *A.*2d 719, that in New Jersey we explicitly rejected the proposal in the Uniform Rules of Evidence that official investigatory conclusions should be included as admissible hearsay. As he observed, the deliberative and drafting process precedent to adoption constituted an "outright desertion of the principle of admissibility of all investigatory findings or conclusions and a reversion to the limitation to statistical findings" only. *Id.* at 598, 259 *A.*2d 719. Judge Conford concluded his detailed analysis in *Phillips* by remarking on the "unmistakable intent to exclude from evidence factual findings or conclusions, aside from statistical findings, by official investigatory bodies, insofar as admissibility is posited upon the exception to the hearsay rule constituted by *Rule* 63(15)." *Id.* at 599, 259 *A.*2d 719.

Similarly, in *Muench, supra,* 255 *N.J.Super.* 288, 605 *A.*2d 242, we held that the trial court did not err in refusing to admit into evidence the probable cause determination of the Division on Civil Rights in plaintiff's later action for sexual harassment. Construing the predecessor to *N.J.R.E.* 803(c)(8), we stated:

> We find no abuse of discretion by the trial court in excluding the probable cause determination. Clearly, it is not a written statement "of an act done," or an "event observed" by a public official. *Evid. R.* 63(15) (emphasis added). It is conclusory material compiled by an investigator for the Division solely for the purpose of determining whether there was any basis for continuing the administrative process. Further, the jury might well have placed undue significance on the investigator's "conclusion," when in fact the investigator makes no findings, but simply determines that the matter should proceed further. Moreover, we presume all of the evidence presented to the investigator will be presented to the jury for its ultimate and independent resolution based on its judgment of the evidence presented during trial.

[*Id.* at 305–06, 605 *A.*2d 242.]

The federal analogue of *N.J.R.E.* 803(c)(8)[4] is in some ways more expansive than our Rule, but the federal courts have reached determinations about the admission of administrative conclusions very similar to our courts in applying our Rule. *Fed.R.Evid.* 803(8)(c) provides, in relevant part, that the following items are exceptions to the hearsay rule:

> Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the government in criminal cases, *factual findings* resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
>
> [Emphasis added.]

In *Beech Aircraft v. Rainey*, the United States Supreme Court held that, as long as the finding in question is based upon a factual investigation and satisfies the trustworthiness requirements of *Fed.R.Evid.* 803(8)(c), it is admissible along with other portions of the report. 488 *U.S.* 153, 170, 109 *S.Ct.* 439, 451, 102 *L.Ed.*2d 445, 463 (1988). At the same time, the Court specifically declined to decide whether legal conclusions are admissible under the Rule. *Id.* at 170 n. 13, 109 *S.Ct.* at 451 n. 13, 102 *L.Ed.*2d at 463 n. 13 (the Court "express[ed] no opinion on whether legal conclusions contained in an official report are admissible as 'findings of fact' under [*Fed.R.Evid.*] 803(8)(C)").

The consensus among the various federal districts and circuits appears to favor the view that legal conclusions are not admissible as "findings of fact" under the Rule. *See, e.g., Starceski v. Westinghouse Elec. Corp.,* 54 *F.*3d 1089, 1099 n. 12 (3d Cir.1995) (excluding EEOC determination that the claim lacked probable cause); *Martin v. Cavalier Hotel Corp.,* 48 *F.*3d 1343, 1357–58 (4th Cir.1995); *Hines v. Brandon Steel Decks, Inc.,* 886 *F.*2d 299, 303 (11th Cir.1989) ("Legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of

---

[4] *N.J.R.E.* 803(c)(8) is New Jersey's counterpart to *Fed.R.Evid.* 803(8)(c). *See* Biunno, Weissbard & Zegas, *Current N.J. Rules of Evidence,* 1991 Supreme Court Committee Comment on *N.J.R.E.* 803(c)(8) (2013).

the report was cognizant of the requirements underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires."), *cert. denied,* 503 *U.S.* 971, 112 *S.Ct.* 1587, 118 *L.Ed.*2d 305 (1992); *In re Plywood Antitrust Litigation,* 655 *F.*2d 627, 637 (5th Cir.1981); *Spruill v. Winner Ford of Dover Ltd.,* 175 *F.R.D.* 194, 198 (D.Del.1997); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.,* 867 *F.Supp.* 686, 692 (N.D.Ill.1994); *Zenith Radio Corp. v. Matsushita,* 505 *F.Supp.* 1125, 1144 (E.D.Pa.1980) ("a finding [under the Rule] does not include legal conclusions that may have been reached by an investigator"), *rev'd in part on other grounds,* 723 *F.*2d 238 (3d Cir.1983), *rev'd in part on other grounds,* 475 *U.S.* 574, 106 *S.Ct.* 1348, 89 *L.Ed.*2d 538 (1986).

■ Further, trustworthiness is the cornerstone of the public records exception to the hearsay rule. *Crispin v. Volkswagenwerk AG,* 248 *N.J.Super.* 540, 552–53, 591 *A.*2d 966 (App.Div.), *certif. denied,* 126 *N.J.* 385, 599 *A.*2d 162 (1991). Hence, a court must be cautious about the use of an administrative determination that may be predicated upon a different, more lenient, standard, or sets forth no factual findings. *See Beech Aircraft, supra,* 488 *U.S.* at 170, 109 *S.Ct.* at 451, 102 *L.Ed.*2d at 463; *cf. Olivieri, supra,* 186 *N.J.* at 524–25, 897 *A.*2d 1003.

■ Guided by these principles, we hold *N.J.R.E.* 803(c)(8) does not authorize the admission of an SSA determination of disability as a hearsay exception in the circumstances of this case. The plain terms of the rule simply do not authorize the admission of an SSA determination that plaintiff is disabled, to be utilized as substantive evidence in a personal injury action where plaintiff has the burden of proving she suffered an injury caused by an accident and that the injury impaired her ability to work.

■ The conclusion of a federal administrative law judge (ALJ) or the SSA itself that a person is disabled is neither an "act done by the official" nor is it "an act, condition or event observed by the official." The history of *N.J.R.E.* 803(c)(8) clearly distin-

guishes an "act done" or an "event observed," on the one hand, and an administrative "conclusion," on the other. *Muench, supra,* 255 *N.J.Super.* at 305, 605 *A.*2d 242; *Phillips, supra,* 107 *N.J.Super.* at 598, 259 *A.*2d 719. "Findings" by a public official are only admissible under the rule if they are statistical—a qualifier obviously inapplicable to an SSA disability determination. *See N.J.R.E.* 803(c)(8)(B).

An SSA disability determination is of dubious probative value in a personal injury action, in any event. The lack of a meaningful adversarial process with respect to the cause, existence and extent of a plaintiff's alleged disability renders the SSA's conclusions on that issue unreliable.

In Social Security disability [5] claim hearings, the ALJ has an affirmative obligation to assist the claimant in developing the facts. *See, e.g., Taybron v. Harris,* 667 *F.*2d 412, 414–15 (3d Cir.1981); *Kephart v. Richardson,* 505 *F.*2d 1085, 1090 (3d Cir. 1974); *Hess v. Sec'y of Health, Educ. and Welfare,* 497 *F.*2d 837, 840–41 (3d Cir.1974) ("Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.")

In evaluating whether substantial evidence supports the ALJ's findings, "leniency [should] be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it [should] be strictly construed. . . ." *Dobrowolsky v. Califano,* 606 *F.*2d 403, 407 (3d Cir.1979) (internal quotation marks omitted). The "special nature of proceedings for disability benefits," *id.* at 406, undermines the probative value of an SSA

---

[5] Disability is defined by the statute as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 *U.S.C.A.* § 423(d)(1)(A).

determination of disability in an adversarial trial where plaintiff bears the burden of proof.

Conversely, defendant may suffer real and significant prejudice from the admission of the SSA disability determination. Introduction of the determination could cause the jury, despite the questionable utility of the determination with respect to causation, to inappropriately give weight, based on the fact that the SSA is a government agency, to its conclusions that plaintiff suffered a disability and was unable to work and to find, therefore, that this was due to defendant's negligence. That issue was, in fact, the sole contested issue in this litigation.

Also, an SSA disability determination must be periodically reviewed and is subject to being overturned. A jury, however, cannot be asked years later to reverse itself based on an SSA disability determination that was later overturned.

Our colleagues in *Golian, supra,* limited their holding to the facts presented, which are distinguishable from this case. There, the plaintiff appealed from a decision by the Family Part pertaining to certain financial matters, such as alimony, equitable distribution of property and counsel fees, which were predicated on imputation of income to her. 344 *N.J.Super.* at 338, 781 *A.*2d 1112. On appeal, the plaintiff argued that her disability status should have resulted in a presumption of inability to work and the burden should have been on defendant to rebut that presumption, particularly since the defendant assisted plaintiff in obtaining the award and benefited from it prior to the divorce proceedings. *Id.* at 341–42, 781 *A.*2d 1112. We reversed and remanded the matter to the Family Part to consider the effect of plaintiff's Social Security disability determination. *Id.* at 343, 781 *A.*2d 1112. However, the holding in *Golian* was explicitly restricted:

> *In the circumstances of this case,* we hold that the SSA adjudication of disability constitutes a prima facie showing that plaintiff is disabled, and therefore unable to be gainfully employed, and the burden shifts to defendant to refute that presumption.
>
> [344 *N.J.Super.* at 342–43 (emphasis added).]

By contrast, defendant here was not involved in the SSA proceedings, had no input with respect to the determination of disability, and did not submit any defense medical reports to the ALJ. Accordingly, plaintiff's reliance on *Golian* is misplaced.

■ Lastly, the SSA determination is unduly prejudicial and is likely to mislead the jury under *N.J.R.E.* 403 (relevant evidence "may be excluded if its probative value is substantially outweighed by the risk of [ ] undue prejudice, confusion of issues, or, misleading the jury. . . ."). "The admission of public officials' fact findings from a hearing present special problems [because] ... [t]he admission of such findings may be significantly more prejudicial than those in a public official's own report, yet less probative of the issues to be determined at trial." Steven P. Grossman & Stephen J. Shapiro, *The Admission of Government Fact Findings Under Federal Rule of Evidence 803(8)(C): Limiting the Dangers of Unreliable Hearsay*, 38 *U. Kan. L.Rev.* 767, 777 (1990). Such a determination "adds nothing to the jury's deliberation, other than the conclusion of another fact finder arrived at through a process similar to the one that the trial is undergoing." *Ibid.*

Given our conclusion that the SSA disability determination was properly excluded by the trial judge, we have no need to address the remainder of plaintiff's arguments, which we determine are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E). With respect to plaintiff's argument that she should have been permitted to cross-examine defendant's experts with the "contrary conclusions" of the SSA, we add only that the argument assumes that the determination would be otherwise admissible, which we hold it is not. Also, it is generally improper to cross-examine an expert about inadmissible hearsay documents upon which the expert has not relied in forming his opinion. *See Corcoran v. Sears Roebuck and Co.,* 312 *N.J.Super.* 117, 130, 711 A.2d 371 (App.Div.1998).

Because defendant has not cross-appealed from the trial judge's ruling that he "opened the door" to the SSA determination by his

closing argument, we have no occasion to review that determination.

Affirmed.