# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4696-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

Y.M.,

      Defendant-Appellant,

and

T.S.,

      Defendant.

_____

IN THE MATTER OF S.B.,

      a Minor.

_____

      Argued September 23, 2019 – Decided October 8, 2019

      Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FN-01-0223-17.

Amy Elizabeth Vasquez, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Amy Elizabeth Vasquez, on the briefs).

Amanda Loring Paoletti, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Amanda Loring Paoletti, on the brief).

Noel Christian Devlin, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Noel Christian Devlin, of counsel and on the brief).

PER CURIAM

Defendant Y.M. (Yolanda), the mother of S.B. (Sarah), appeals from a May 4, 2018 order terminating this Title Thirty litigation after the court determined at a best interest hearing that Sarah should remain in the custody of W.O. (Wendy), a family member. Yolanda claims that she was denied due process because her trial counsel ineffectively assisted her at the best interest hearing and at other stages of the proceedings, which "subjected [her] to a substandard level of justice . . . ." After evaluating the record against the applicable legal standard, we conclude defendant has failed to establish that her

trial counsel's performance was constitutionally deficient or that she was prejudiced by any of the alleged errors committed by her counsel. Accordingly, we affirm.

I.

The Division of Child Protection and Permanency's (Division) involvement with Yolanda's family arose from the relationship among Sarah, Yolanda, and Yolanda's then-nineteen-year-old paramour, J.M. (Yosef). Starting when Sarah was five years old, Yosef, who was living with Yolanda and Sarah, subjected Sarah to threats, harassment, and violence. On one occasion, Yosef threw a cup at Sarah and told her "he did not give a shit if [Sarah] died or killed herself."

On another occasion shortly thereafter, Yolanda and Sarah arrived home, found Yosef intoxicated, and a picture of Sarah damaged. Yosef again threatened Sarah, telling her that he hoped she "got hit by a car and die[d]." He also called her "fat, ugly[,] and stupid," and stated he hoped she committed suicide. As a result of this incident, the Atlantic City Police Department (ACPD) responded to Yolanda's home and referred the case to the Division. Following an investigation, Yosef was asked to leave the home.

A-4696-17T1

During the course of the Division's investigation, Yolanda, who was Sarah's primary caregiver, stated she wished to continue her relationship with Yosef notwithstanding Sarah's expressed fear of him. Eventually, however, Yolanda accepted the Division's implementation of a safety protection plan which restricted Yosef from the home.

Despite the safety protection plan, approximately a month later, Sarah told the Division that Yosef had been at the house for dinner, and after arguing with Yolanda, Yosef grabbed a knife and told Sarah he was going to kill her. Yolanda blocked Yosef from Sarah, and Sarah called the ACPD, who arrived after Yosef had left. Sarah expressed fear and apprehension after that incident and stated she wanted Yolanda to leave Yosef.

The next day, the ACPD observed Yosef walking toward the home. After Yosef admitted that he was carrying a knife and fled, the ACPD unsuccessfully attempted to apprehend him. Because Yolanda refused to go to a women's shelter or make alternative living arrangements for her and Sarah, the Division conducted an emergency removal and placed Sarah with an extended family member, Wendy. The Division provided Yolanda with a copy of the removal materials, which were translated from English to Spanish.

4

The Division thereafter filed a verified complaint seeking relief under both Titles Nine and Thirty. At a hearing on the order to show cause, Yolanda consented to the Division's custody, care, and supervision of Sarah, and did not challenge the court's findings related to the emergent removal. Instead, Yolanda reserved her right to dispute removal at the return date on the order to show cause hearing. The Division also requested that Yolanda obtain domestic violence counseling, a psychological evaluation, and parenting skills training. Yolanda, however, consented only to domestic violence counseling. Accordingly, the court entered an order that Sarah be placed in the immediate custody, care, and supervision of the Division and that Yolanda be assessed by a domestic violence liaison.

On March 21, 2017, the parties appeared on the return date of the order to show cause. At the conclusion of the proceeding, the parties entered a consent order maintaining Sarah under the Division's care, custody and supervision. In addition, Yolanda agreed to undergo a psychological evaluation and attend individual counseling with a "parenting skills focus" with Ana Placencia, MSW, LCSW. The court's order also permitted weekly supervised visits between Yolanda and Sarah. Finally, the order scheduled a fact finding hearing for April

5

21, 2017, at which time the court would also address a complaint Wendy filed under the FD docket[1] for custody of Sarah.

A Spanish interpreter was present at the April 21, 2017 hearing. The court adjourned the scheduled fact finding hearing and instead addressed Wendy's custody application. Yolanda indicated she would consent to the application if the court determined that Sarah could not be returned to her. The Division took no position on Wendy's application but, joined by the Law Guardian, objected to Sarah being reunified with Yolanda.

After considering testimony from Wendy, the court denied Yolanda's request for reunification and instead granted legal and physical custody of Sarah to Wendy. In addition to granting Wendy custody of Sarah, the court's April 21, 2017 order stated that Yosef "cannot be around [Sarah] at any time," and continued Yolanda's liberal, supervised visits without overnights. Finally, the court rescheduled the fact finding proceeding for June 29, 2017.

At the June 29, 2017 hearing, where a Spanish interpreter was again present to translate the proceeding, the Division withdrew its Title Nine claims

---

[1] In the Family Part, cases addressing custody, visitation, and support, but not the dissolution of a marriage, are heard under the FD docket and matters involving the dissolution of a marriage are heard under the FM docket. Cases addressing child welfare issues under Title Nine and Title Thirty are typically heard under the FN docket.

A-4696-17T1

against Yolanda. As a result, the Division requested a summary finding under N.J.S.A. 30:4C-12 for services to assist Yolanda and Sarah to address the issues that led to Sarah's removal. Yolanda also renewed her request for custody of Sarah, which both the Division and Law Guardian opposed. Yolanda's counsel argued that Yolanda did not believe that "there [had] been any problems with her parenting, and [did] not feel that there [was] any reason why [Sarah] should be placed out of her care."

After considering the "unimpeached" testimony from a "reliable and credible" Division caseworker, who testified that Yolanda did not "seem to have a good grasp of the reason" for Sarah's removal, the court found that Sarah feared Yosef, and suffered "trauma." Accordingly, the court concluded that Yolanda and Sarah were a family in need of services under N.J.S.A. 30:4C-12, in order for Yolanda to "understand how to prevent the incident that led to the removal of [Sarah] from occurring again." In two separate orders issued on June 29, 2017, the court directed that Yolanda engage in domestic violence and individual counseling with Placencia, as well as participate in a psychological evaluation. Finally, the court rejected Yolanda's custody request and maintained legal and physical custody of Sarah with Wendy under the FD docket.

A-4696-17T1

At a compliance hearing on September 6, 2017, where a Spanish interpreter attended, the Division expressed concern regarding Yolanda's continued efforts to seek reunification with Sarah because Yolanda still believed Sarah and Yosef could live together as a family, and she had not participated in supervised visitation with Sarah. As a result, the court ordered the Division to develop a plan, consistent with Yolanda and Sarah's individual counselor's recommendations, to provide therapeutic services with a goal toward reunifying Yolanda with Sarah. The court's order also maintained legal and physical custody of Sarah with Wendy.

At a December 12, 2017 compliance hearing, Yolanda renewed her application to be reunified with Sarah, which the Division and Law Guardian again opposed. A Spanish interpreter was again present at the proceedings. The court denied Yolanda's application but subsequently entered a consent order permitting unsupervised visitation between Yolanda and Sarah, excluding overnight visits, at Sarah's discretion.

On May 2, 2018, the court held a best interest hearing pursuant to New Jersey Div. of Youth and Family Servs. v. G.M., 98 N.J. 382 (2009). All counsel stipulated to the admission into evidence of the April 5, 2018 court report, which included monthly progress notes from Placencia. Neither the Division nor

Yolanda called any witnesses or introduced any additional documentary evidence.

Placencia's notes contained her observations from counseling sessions with Yolanda and Sarah. For example, Placencia noted that Yolanda stopped attending sessions and commented that Yolanda expressed distrust and impatience toward her. Shortly after Yolanda returned to counseling, Placencia included Sarah for parent-child sessions. Placencia recorded that after three such sessions, Yolanda became discouraged because Sarah shared affection with Wendy.

Yolanda also became frustrated when Sarah cancelled two overnight visits. In the first instance, Sarah stated that she was not feeling well, and Yolanda believed that was an excuse. Placencia noted that on the second occasion, Sarah declined an overnight stay and Yolanda called her while "very angry," prompting Sarah to hang up the phone. Moreover, Placencia wrote that Yolanda failed "to see the situation from her daughter's perspective" and that Yolanda "has closed the door to any possible hope of reconciliation . . . ." Further, Placencia noted Yolanda's "unresolved bitterness and anger, inflexibility about . . . the situation . . . and above all, a lack of empathy towards [Sarah] . . . ."

A-4696-17T1

During the hearing, Yolanda's counsel affirmatively relied upon Placencia's notes to argue that Yolanda did not have a "fair chance" to repair her relationship with Sarah because Wendy had influenced Sarah against her. In addition, Sarah's counsel advised the court that Sarah "[did] not want to undergo any more therapy or counseling . . . with her mom," and Yolanda's counsel informed the court that Yolanda "[did] not feel that additional counseling would be helpful."

Based on Placencia's notes, counsels' arguments, and the court's familiarity with the case, the court made comprehensive and detailed findings in which it concluded that it was not in Sarah's best interest to be placed back in Yolanda's home because "[i]t would [have been] harmful to her" and there was "an adversarial parent-child relationship that therapy [had] not resolved." The court further concluded that "there was no progress" between Yolanda and Sarah and "[the relationship] got worse rather than better."

Accordingly, the court entered the May 4, 2018 order under review terminating the litigation with the consent of all parties, with defense counsel reserving Yolanda's right to appeal.

The May 4, 2018 order also provided that Yosef was "restrained from all contact with [Sarah]," and maintained legal and physical custody with Wendy,

10

while also continuing to grant liberal, unsupervised visitation to Yolanda, consistent with an amended May 2, 2018 order entered under the FD docket. That order noted that the court "closed the FN matter after having a custody hearing . . . and determin[ing] that . . . [Sarah] should remain with [Wendy] based upon the [Division] court report along with [Placencia's] notes and summary arguments by the respective attorneys, neither party wanted to continue in therapy and the child remains unwilling to return home due to the history in the FN case."[2]

On appeal, Yolanda claims she was denied due process because she received ineffective assistance of trial counsel contrary to the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey) (Strickland/Fritz test). According to Yolanda, her trial counsel's performance

---

[2] We note that at the May 2, 2018 best interest hearing, defense counsel argued that pursuant to Watkins v. Nelson, 163 N.J. 235, 247 (2000), "there need[ed] to be 'proof of parental unfitness,' misconduct, abandonment, or 'exceptional circumstances' … in order for [Wendy] to leave . . . with custody." The court disagreed, concluding that Watkins was factually inapposite to the circumstances that led to Sarah's removal and which prevented reunification. Yolanda has neither raised nor briefed that issue on appeal and we accordingly consider the argument waived. See Seeward v. Integrity, Inc., 357 N.J. Super. 474, 479 n.3 (App. Div. 2003).

A-4696-17T1

"fell outside the broad range of professionally acceptable performance," and "but for counsel's performance, the outcome would have been different."

Specifically, Yolanda claims that her counsel's failure to object to the admission of Placencia's notes was constitutionally deficient because a properly lodged objection "likely would have been sustained," and absent Placencia's notes, "there would not have been evidence before the court upon which to deny returning custody of [Sarah] to her mother . . . ." Second, Yolanda claims her trial counsel: 1) waived her right to an evidentiary dispositional hearing without first consulting with her and obtaining a knowing waiver; and 2) "consented to custody of [Sarah] . . . [with] no voir dire . . . to verify [Yolanda's] consent," and without the benefit of a Spanish interpreter at the order to show cause hearing. We disagree with all of Yolanda's arguments.

II.

"Parents in New Jersey charged with civil abuse and neglect under Title Nine or who are subject to Title Thirty termination proceedings have a constitutional right to counsel under the due process guarantees of Article I, paragraph 1 of the State Constitution, and a statutory right under N.J.S.A. 9:6–8.43(a), 9:6–8.30(a), and 30:4C–15.4(a)." New Jersey Div. of Child Prot. and Permanency v. G.S., 447 N.J. Super. 539, 557 (App. Div. 2016) (citing N.J. Div.

of Youth & Family Servs. v. B.R., 192 N.J. 301, 305 (2007)) (other citations omitted).

In B.R., the Supreme Court adopted the two-prong Strickland/Fritz test when assessing a claim of ineffective assistance in termination of parental rights litigation. B.R., 192 N.J. at 308–09. Although this is neither a Title Nine abuse or neglect case, nor a Title Thirty action seeking to terminate Yolanda's parental rights, we conclude the principles underlying the B.R. decision apply equally to a claim, like this case, where the Division exercises its emergency removal powers, and the court orders services and makes custody determinations.

Under the two-part Strickland/Fritz test: "(1) counsel's performance must be objectively deficient—i.e., it must fall outside the broad range of professionally acceptable performance; and (2) counsel's deficient performance must prejudice the defense—i.e., there must be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 307 (quoting Strickland, 466 U.S. at 694). A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome" of the proceeding. Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52. The standard is "highly deferential" and defendant must overcome the strong

A-4696-17T1

presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In reviewing claims of ineffective assistance of counsel, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (citations omitted). Appellate courts may examine the record on appeal to determine whether counsel was deficient without remanding for an evidentiary hearing on the ineffective assistance claim. See, e.g., New Jersey Div. of Child Prot. and Permanency v. P.D., 452 N.J. Super. 98, 116–18 (App. Div. 2017).

Here, based on our review of the record, we conclude Yolanda failed to establish both prongs of the Strickland/Fritz test. According to Yolanda, the entirety of the Placencia notes were inadmissible expert opinions under N.J.R.E. 808, and as noted, a properly lodged objection "likely would have been sustained." Yolanda further reasons that absent the Placencia notes, "there would not have been evidence before the court upon which to deny returning custody of [Sarah] to her mother . . . ." We disagree for two reasons.

First, contrary to Yolanda's argument, even had her counsel objected to the admission of Placencia's notes, the Division could simply have called Placencia to testify, which would have rectified any alleged evidentiary defect. In this regard, Yolanda's counsel relied on the helpful portions of Placencia's notes. Indeed, had counsel objected and forced the Division to call Placencia as a live witness, she clearly could have muted that helpful testimony and highlighted the overwhelmingly harmful portions of her notes.

Second, any such objection would not have resulted in the preclusion of the entire court report, as portions of the Placencia notes were clearly admissible records of a Division consultant under Rule 5:12-4(d)[3] and as business records under N.J.R.E. 803(c)(6),[4] and not excludable expert opinion under N.J.R.E.

---

[3] Rule 5:12-4(d) provides that "[t]he New Jersey Division of Child Protection and Permanency . . . shall be permitted to submit into evidence, pursuant to N.J.R.E. 803(c)(6) and 801(d), reports by staff personnel or professional consultants. Conclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal."

[4] N.J.R.E. 803(c)(6) excludes from the hearsay rule "records of regularly conducted activity" provided that "[a] statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy."

808.[5]  As we recently explained in <u>N.J. Div. of Child Prot. & Permanency v.</u>

<u>N.T.</u>, 445 N.J. Super. 478, 487 (App. Div. 2016),

> To be admissible as a business record of the Division, a Division report must meet the requirements of N.J.R.E. 803(c)(6), whether the report is offered under N.J.S.A. 9:6–8.46(a)(3), <u>Rule</u> 5:12–4(d), or <u>In re Guardianship of Cope</u>, 106 N.J. Super. 336 (App. Div. 1969).  If a Division report is admissible under N.J.R.E. 803(c)(6) and meets the requirements of N.J.S.A. 9:6–8.46(a)(3), <u>Rule</u> 5:12–4(d), or <u>Cope</u>, the court may consider the statements in the report that were made to the author by Division staff personnel, or affiliated medical, psychiatric, or psychological consultants, if those statements were made based on their own first-hand factual observations, at a time reasonably contemporaneous to the facts they relate, and in the usual course of their duties with the Division. However, whether the Division report is offered under N.J.R.E. 803(c)(6), N.J.S.A. 9:6–8.46(a)(3), <u>Rule</u> 5:12–4(d), or <u>Cope</u>, statements in the report made by any other person are inadmissible hearsay, unless they qualify under another hearsay exception as required by N.J.R.E. 805.  Expert diagnoses and opinions in a Division report are inadmissible hearsay, unless the trial court specifically finds they are trustworthy under the criteria in N.J.R.E. 808, including that they are not

---

[5]  <u>Rule</u> 803(c)(6) is subject to N.J.R.E. 808 which excludes "[e]xpert opinion which is included in an admissible hearsay statement . . . if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness."

A-4696-17T1

too complex for admission without the expert testifying subject to cross-examination.

N.J.R.E. 808 does not exclude "a straightforward observation of a treating physician," Agha v. Feiner, 198 N.J. 50, 66 (2009) (citation omitted), or doctors' "factual observations." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 526 (App. Div. 2017). Thus, we have ruled admissible findings that the patient "has tics and was moving too much at time of procedure," Konop v. Rosen, 425 N.J. Super. 391, 404-05 (App. Div. 2012), and that "there was no spasm present." Blanks v. Murphy, 268 N.J. Super. 152, 162–64 (App. Div. 1993).

Placencia was clearly a Division "professional consultant," see Rule 5:12-4(d), who performed counseling to assist Yolanda and Sarah consistent with the court's March 21, 2017 order. Placencia's notes were submitted as part of a court report and contain observations and statements of Yolanda, which were separately admissible under N.J.R.E. 803(b)(1) or 803(c)(25), and not for any complex diagnosis. See N.J.R.E. 702 (stating that an expert opinion conveys "scientific, technical, or other specialized knowledge," such as a complex diagnosis). By way of example only, Placencia noted that at one point "[Yolanda] cried inconsolably and expressed distrust of anybody she talks to," that "on May 22 [Yolanda] did not confirm [her] appointment, so it was

cancel[l]ed," that Yolanda "expressed she would like to recapture the past," and that "[Yolanda] requested [Placencia] . . . 'do her job' instead of presenting 'nonsensical' ideas to her." Thus, had Yolanda's counsel objected and invoked N.J.R.E. 808, the court likely would not have barred the admissibility of the entire Placencia report.

Further, even were we to assume that a successful objection would have precluded admission of the Placencia notes, the court's best interest decision was fully supported by the record on appeal and the court's thorough understanding of that record based on the prior proceedings and undisputed facts. The record supports the conclusion that throughout the course of the Title Nine and Title Thirty litigation, Yolanda was presented with numerous opportunities to strengthen her relationship with Sarah and protect her by engaging in therapy, and ending her relationship with Yosef, but she failed to do so. Indeed, it was undisputed—independent of anything contained in the Placencia notes—that at the best interest hearing Yolanda expressly refused additional counseling to repair her relationship with Sarah. We also note that Yolanda has not specifically disputed on appeal any of the court's factual findings supporting its detailed and comprehensive best interest findings under N.J.S.A. 9:2-4.

As in <u>New Jersey Div. of Youth and Family Servs. v. I.S.</u>, 214 N.J. 8, 41 (2013), "it would require blinders" for the trial court not to observe that granting custody to Wendy "was an appropriate disposition to end the Title 30 proceedings" and "the court's ultimate action was the only one that could have been judicially imposed." <u>Ibid.</u> Indeed, it would have been wholly inappropriate, based on the current record, to return Sarah, now seventeen, to Yolanda's custody.

## III.

We also reject Yolanda's argument that her counsel's representation was constitutionally ineffective because she failed to consult with Yolanda before waiving "the [court's] offer of a plenary hearing." We initially note that there is no evidence in the trial or appellate record to support Yolanda's contention. Instead, the record reflects that Yolanda was present at all stages of the proceedings with appointed counsel who zealously and conscientiously advocated on her behalf at the fact finding, compliance, and dispositional hearings, where she regularly consulted with Yolanda. At no point did Yolanda express any dissatisfaction with her counsel or identify what additional evidence, by way of witnesses or documentary evidence, she could have presented that would have resulted in a different outcome.

A-4696-17T1

## IV.

Finally, Yolanda claims that "[a]lthough her primary language is Spanish and she speaks little or no English, the record does not indicate an interpreter's assistance at the [order to show cause] proceeding" and that "[t]here was no voir dire of [Yolanda] to verify her consent even though she was present at the hearing." The record reflects, however, that a certified interpreter was present to assist at the April 2017, June 2017, September 2017, December 2017, and May 2018 hearings. Yolanda also was presented with the order to show cause papers translated into Spanish.

Further, at the April 21, 2017 hearing, the court addressed custody of Sarah, and considered testimony from Wendy, and considered testimony from a Division caseworker at the June 29, 2017 fact finding hearing. And, as noted, at the May 2, 2018 hearing, the court addressed Yolanda's request for reunification and considered Placencia's notes and Yolanda's refusal to engage in further therapy. At no point in these contested proceedings did Yolanda indicate that her initial consent was involuntary or uninformed. Based on our review of these proceedings, it is clear that Yolanda fully understood the Division's position and we therefore find any error in the lack of an interpreter at the March 2, 2017 order to show cause proceeding harmless.

A-4696-17T1

To the extent we have not specifically addressed any of Yolanda's arguments it is because we find that any such claim is without sufficient merit to warrant discussion in a written opinion.  See R. 2:11–3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION